Gwendola M. JONES, et al., Plaintiffs-Appellants,

v.

Bob GRAHAM, et al., Defendants-Appellees.

Bennie SMALL, Jr., et al., Plaintiffs-Appellants,

v.

Bob GRAHAM, et al., Defendants-Appellees.

Henry T. McMILLIAN, Jr., et al., Plaintiffs-Appellants,

v.

Bob GRAHAM, et al., Defendants-Appellees.

No. 82–5398.

United States Court of Appeals, Eleventh Circuit.

July 22, 1983.

Clyde E. Murphy, Napoleon B. Williams, Jr., New York City, for plaintiffs-appellants.

Charles T. Collette, Tallahassee, Fla., Jon W. Searcy, Dist. Counsel, Fla. Dept. of Health & Rehabilitative Serv., Dist. 1, Pensacola, Fla., Leo J. Stellwagon, Asst. Dist. Counsel, Fla. Dept. of Health & Rehabilitative Services—Dist. IV, Jacksonville, Fla., Mitchell D. Franks, Asst. Atty. Gen., Dept. of Legal Affairs, Linda Loomis Shelley, Asst. Gen. Counsel, Tallahassee, Fla., for defendants-appellees.

Before RONEY and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

The task facing the Court is to decide whether the record in this case supports the district court's dismissal for failure both to prosecute and to comply with court orders. Fed.R.Civ.P. 41(b) authorizes a district court, on defendant's motion, to dismiss an action for failure to prosecute or to obey a court order or federal rule. The court's power to dismiss is an inherent aspect of its authority to enforce its orders and ensure prompt disposition of lawsuits. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962); *State Exchange Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir.1982). The legal standard to be applied under Rule 41(b) is whether there is a "clear record of delay *or* willful contempt *and* a finding that lesser sanctions would not suffice." *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir.1980) (emphasis added). Although the standard of review on appeal is abuse of discretion, dismissal of an action with prejudice "is a sanction of last resort, applicable only in extreme circumstances." *State Exchange Bank v. Hartline*, 693 F.2d at 1352 (quoting *EEOC v. First National Bank*, 614 F.2d 1004, 1007 (5th Cir.1980), *cert. denied*, 450 U.S. 917, 101 S.Ct. 1361, 67 L.Ed.2d 342 (1981). This case presents such an extreme circumstance. After reviewing the record, we conclude the district court acted within the bounds of its discretion. We affirm.

These suits began as three separate class actions, although never certified as such, against the Governor of Florida, numerous

officials of the state Department of Health and Rehabilitative Services (hereinafter the HRS defendants), and the state personnel director in the Florida Department of Administration (DOA). Each suit alleged employment discrimination under 42 U.S.C.A. §§ 1981, 1983, and 2000e et seq.

Plaintiffs initiated two of these cases in the Jacksonville and Tampa divisions of the Middle District of Florida and the third in the Pensacola division of the Northern District.[1] The third case was transferred to the Middle District of Florida, and on November 27, 1978, the court consolidated the three cases. In detailing the history of the case, it seems easier to review the preconsolidation history in each case separately, and the post-consolidation events of the case as a single unit.

*Jones v. Graham*

After defendants filed answers or motions, they initiated discovery on May 2 with a request for production of documents. Plaintiffs obtained an extension of time in which to respond to the motion to dismiss filed by defendants Askew[2] and Kennison, which the court approved.[3] Plaintiffs, however, filed their opposition seven days late. Plaintiffs never responded to defendant Williams' motion to dismiss.

On June 15 plaintiffs began discovery by seeking leave to serve in excess of 50 interrogatories. The court granted the motion but limited the number to 100. Defendants subsequently moved to strike the interrogatories as served because with subparts they totaled 284 in number in violation of the court's order. Plaintiffs re-served the interrogatories in compliance with the court's order.

Plaintiffs' motion to strike certain defenses as insufficient, filed on September 8, constituted the only other activity of any consequence during 1978. Plaintiffs did not file similar motions in *Small* and *McMillian* during 1978.

*Small v. Graham*

This case was transferred to the Jacksonville Division on May 28. Unlike *Jones,* plaintiffs did not seek additional time to respond to the motion to dismiss but filed an untimely response on June 27. Plaintiffs undertook no discovery in *Small* during 1978. Defendants served their first request for production of documents on May 3, to which plaintiffs responded on June 16. Plaintiffs have never served one of the *Small* defendants, Richard Gordon.

*McMillian v. Graham*

Although plaintiffs filed this complaint on March 1, 1978, they did not supply copies for service of process until two months later, on May 5. They have never served a named defendant, Robert Taylor. Plaintiffs received an extension of time for responding to the Askew-Kennison motion to dismiss to June 20. They filed an untimely response on June 26. Plaintiffs served their first set of interrogatories on July 25 to which defendants filed objections and sought an order striking them on August 15. Apparently the court never entered an order on this issue in *McMillian.*

The docket sheet shows no other entries regarding discovery in this case until after it was transferred to the Jacksonville Division and consolidated with *Jones* and *Small.*

*The Consolidated Case*

On January 18, 1979, defendants served their first request for production of documents in *McMillian* and on January 22 noticed their first depositions in all three cases. Plaintiffs, on January 25, served their first request for production of documents in *Jones* and *McMillian.* The only

---

1. In *Jones v. Graham,* No. 78–111–Civ–J–C, plaintiffs filed a complaint on February 27, 1978 in Jacksonville and an amended complaint the next day. Plaintiffs filed *Small v. Graham,* No. 78–0162–Civ–T–K, on February 28, 1978 and *McMillian v. Graham,* No. 78–608–Civ–J–C, in Pensacola on March 1, 1978. During 1978 *Small* and *McMillian* were transferred to the Jacksonville division.

2. Reuben O'D Askew was governor and hence was a named defendant in each of the three suits when originally filed. Robert Graham was substituted as a defendant when he became governor.

3. Local Rule 3.01(b) of the United States District Court for the Middle District of Florida requires a party opposing a written motion or other application to respond within 10 days. Fed.R.Civ.P. 6(e) adds three days for mailing.

other entries docketed during 1979 for all three cases included: defendants' motions to substitute party defendants, a stipulation to amend defendants' notices of depositions, plaintiffs' response to defendants' request for production of documents, orders transferring the cases to Judge Black and then to Judge Castagna, and a notice of substitution of defense counsel.

On January 22, 1980, Judge Castagna entered an order directing plaintiffs' counsel to initiate a status report conference with defendants' counsel and "to jointly submit a 'Status Report' *within 20 days.*" (emphasis in original). When plaintiffs had not responded by March 26, the court ordered plaintiffs to show cause why the suits should not be dismissed for failure to comply with the order and set a hearing for April 3. The day after the hearing, the court entered an order deferring a ruling on its show cause order based on plaintiffs' representation that a joint status report would be filed by April 25. The parties filed the report on April 24.

At the time of the court's January 22, 1980 order, the last plaintiff-initiated activity in *Jones* and *McMillian* was the first request for production of documents filed a year before on January 25, 1979. In *Small,* plaintiffs had initiated no discovery, and all of their activity had been undertaken in response to various defense motions. On April 9, 1980, the *Small* defendants moved to dismiss that case for failure to prosecute. Plaintiffs did not respond until December 1, nearly eight months later.

Plaintiffs engaged in a flurry of activity around the time the status report was filed. On April 20 and 21, 1980, more than two years after they had instituted suit, plaintiffs served their first and second sets of interrogatories in *Small,* the first discovery they had undertaken in that suit. Plaintiffs filed an untimely response on April 24 to defendants' April 3 motions for partial summary judgment. On that same day, they filed a second response to the motions to dismiss in each case made by defendants Askew and Kennison nearly two years before.

On April 25 plaintiffs moved to strike certain defenses in all three cases. These motions were substantially the same as the one initially filed by the *Jones* plaintiffs in September 1978. The court denied the motions, noting they were untimely and were not the proper procedural method to deal with the issues raised.

The court entered an order on July 10 dealing with several pending motions which merits further examination. The order granted four defense motions, noting that as to each plaintiffs had filed no opposition. These included motions (1) by defendants Askew and Kennison filed May 27, 1980 to stay discovery until resolution of their pending motion to dismiss or for more definite statement, (2) by the HRS defendants filed May 7, 1980 for leave to reply to plaintiffs' untimely response in opposition to an HRS motion for partial summary judgment, (3) by defendant Williams for a protective order allowing him to not respond to interrogatories until the court ruled on his motion to dismiss, and (4) by the defendants in *Small* and *McMillian* to substitute party defendants.

In the period from May 1980 to December 1, 1980 very little occurred. Plaintiffs responded to a defense request for oral argument on their motions for partial summary judgment, asking the court to hear all pending motions. The court held a hearing on December 1. It entered an order on December 3 denying motions by defendant Williams and by defendants Askew and Kennison to dismiss as to the § 1983 claim, and by the HRS defendants for partial summary judgment. It also denied the *Small* defendants' motion to dismiss for failure to prosecute, based on the judicial preference for adjudicating matters on their merits and the fact that "there has been progress in the case since the filing of the motion to dismiss." The court granted the motion by defendants Askew and Kennison to dismiss the Title VII claim as to them.

With the resolution of these motions, the stay of discovery granted by the court on May 27 no longer applied. Defendant Kennison answered on December 17 and de-

fendant Askew answered on January 4, 1981, within the time extension granted by the court. The following chart details the relevant aspects of this litigation subsequent to January 4, 1981:

### 1981

**February 10** Court orders plaintiffs' attorneys to file status report with clerk within 15 days after conferring with all counsel.

**February 27** Not having been contacted, defense attorneys unilaterally respond to court's order.

**March 13** Court orders plaintiffs to comply with previous order within 10 days on pain of dismissal.

**March 16** Plaintiffs' response, dated March 11, is docketed. It states hospitalization of lead counsel prevented timely response.

**May 14** Court enters order closing discovery February 5, 1982, ordering parties to file pre-trial stipulation by February 21, 1982, and setting pre-trial conference on February 24, 1982.

**July 14** Defendants begin deposing named plaintiffs.

**October 29** Court orders plaintiffs to consider filing within 20 days a motion to voluntarily dismiss those plaintiffs it desires or advise court of their intent.

**November 18** Plaintiffs inform court they will file motion "shortly."

**December 7** Court directs plaintiffs to file motion within 15 days.

**December 17** Plaintiffs' second request for production of documents.

**December 18** Plaintiffs' third interrogatories to defendants.

**December 23** Order on parties' stipulation to dismiss Ernest Buggs, who failed to respond to five deposition notices, as named plaintiff.

### 1982

**January 22** Court orders plaintiffs to file within 10 days a motion voluntarily dismissing Patricia McCray, a named plaintiff who had died.

**January 31** Plaintiffs move to dismiss Patricia McCray.

**February 8** Plaintiffs file stipulation and joint motion to extend discovery to May 6, 1982, and to continue pre-trial conference and trial to date subsequent to May 6.

**February 24** Pre-trial conference before Judge Moore.

At the conference plaintiffs' counsel informed the court that a pre-trial stipulation had not been filed in accordance with the court's order of May 14, 1981. Defense counsel advised the court that defendants had unilaterally prepared a pre-trial stipulation and stated that if the outstanding defense motions could be resolved defendants were prepared to go to trial. After reviewing the history of the case, the court asked plaintiffs' counsel to show cause why the cases should not be dismissed for lack of prosecution and failure to comply with court orders. Plaintiffs failed to do so to the court's satisfaction. The court proceeded to dismiss and entered an order to that effect dated March 2, 1982.

The court based its dismissal on two grounds. The first was plaintiffs' failure to comply with court orders. These included the failure to instigate a pre-trial conference and file a pre-trial stipulation as required by the order of May 14, 1981, and the failure to timely advise the court of the status of the cases as required by the orders of February 10, 1981 and January 22, 1982. The second ground was lack of prosecution. The court noted that although the suits were to be prosecuted as class actions, plaintiffs not only had failed to move for class certification within the 90-day time limit imposed by local rules, they had not moved for certification at all nor moved the court for an extension of time in which to do so. It also pointed out that plaintiffs had not responded for nearly eight months to motions by defendants Askew and Kennison to dismiss *Small* for failure to prosecute. Finally, the court noted that since December 1980 plaintiffs' activity had been confined to responding to various defense motions.

The order recited that the court had considered lesser sanctions but rejected them. It stated, "Plaintiffs' flagrant and consist-

ent failure to timely comply with court orders, and their virtual lack of prosecution in these cases, has greatly prejudiced defendants," which prejudice "can only be cured by the sanction of dismissal."

■ We assume without deciding that none of the occurrences relied on by the district court standing alone would have been a sufficient basis for the dismissal. *Cf. EEOC v. Troy State University*, 693 F.2d 1353, 1354 (11th Cir.1982) (reversing dismissal under Fed.R.Civ.P. 37 because noncompliance with single discovery order stemmed from confusion and misunderstanding), *cert. denied*, —— U.S. ——, 103 S.Ct. 3538, 77 L.Ed.2d 1388 (1983). The court was entitled to consider, however, the long pattern of conduct which amounted to want of prosecution and several failures by plaintiffs to obey court rules and orders. *Ramsay v. Bailey*, 531 F.2d 706, 708–09 (5th Cir.1976), *cert. denied*, 429 U.S. 1107, 97 S.Ct. 1139, 51 L.Ed.2d 559 (1977).

■ The record supports both grounds on which the court based its decision. First, there is a clear record of delay. Plaintiffs failed to effect service on two defendants. *See Veazey v. Young's Yacht Sales & Service, Inc.*, 644 F.2d 475, 477 (5th Cir.1981). They undertook no discovery from the time they served interrogatories in *Small* on April 20 and 21, 1980, until December 15, 1981, when they served what they styled their third interrogatories in the face of the closure of discovery on February 5, 1982. The record reveals three substantial periods of plaintiff inactivity: (1) from late 1978, throughout 1979, and continuing until the court's first status order on January 22, 1980; (2) from the first joint case status report of April 24, 1980 to the court's second case status order on February 20, 1981; and (3) from plaintiff's untimely concurrence, served on March 11, 1981, in defendants' unilateral response to the court's second case status order until December 15, 1981, when they served their first discovery directed to all three cases.

Plaintiffs admittedly were not idle during these periods. They responded to many defense motions, attended depositions noticed by defendants, answered interrogatories, and produced documents. They prevailed on several jurisdictional challenges. Many of these actions, however, were untimely. Counsel failed to attend several depositions during 1979, and plaintiffs simply did not respond at all to several motions. The *Small* defendants' motion to dismiss for failure to prosecute clearly called for an expeditious response, yet plaintiffs inexplicably waited for almost eight months to respond. We have found no case, and plaintiffs have cited none, holding that plaintiffs may meet the obligation to prosecute a case imposed on them by Rule 41(b) by responding to defendants' motions or by allowing defendants to assume responsibility for discovery. We further note that although the court stayed discovery from May to December 1, 1980, the stay applied only to defendants Askew and Kennison and not to the HRS defendants, who had answered the complaints in *Jones* and *Small* on April 24, 1978, and in *McMillian* on May 24, 1978. Plaintiffs have not noticed or taken one deposition during the entire course of this litigation. That plaintiffs informally gathered much information without the need for formal discovery is of no avail because the fact remains that at the pre-trial hearing they were not ready to proceed to trial and said they needed another three months to complete discovery.

Second, there were numerous instances in which plaintiffs violated local rules or court orders by filing untimely responses or by not responding until the court had entered order after order reducing the time period in which plaintiffs could respond. The record shows plaintiffs violated five court orders directing them to respond within a certain time. In two instances the court threatened to dismiss unless plaintiffs responded. The failure to timely respond to the court's February 10, 1981 status order arguably was justified by the unexpected hospitalization of plaintiffs' lead counsel. What was not justified was the failure by any of plaintiffs' other attorneys—there were four attorneys of record—to inform the court of counsel's incapacity and to re-

quest relief from the deadline before it passed. Plaintiffs obtained two stipulations to extend the time in which they could take a particular action. As to the first, their response was still untimely. As to the second, the pre-trial order, although plaintiffs sought defendants' agreement to delay the close of discovery and the start of the trial, they did not have the court's approval to do so. After four years plaintiffs were not ready to try the cases.

Plaintiffs' arguments that they were not on notice that dismissal was a possibility or that the court should have used lesser sanctions are not supported by the record. As to notice, the court entered two show cause orders in this case, the first on March 26, 1980. The court did use lesser sanctions. The court struck plaintiffs' first interrogatories for violation of its order limiting them to 100. It took three court orders before plaintiffs filed a motion to voluntarily dismiss a named plaintiff who had died during the pendency of the action. In the face of such demonstrated disregard of court orders, the court reasonably concluded that any further attempts to try lesser sanctions would be futile. The record supports the court's findings of delay and willful violation of court orders.

AFFIRMED.