**SEAROCK, d/b/a Allied Marine,**
**Plaintiff-Appellee,**

v.

**Greg STRIPLING,**
**Counter-Claimant-Appellant,**

**AMF Inc., d/b/a Hatteras Yachts**
**and Aetna Insurance Co.,**
**Third-Party Defendants.**

No. 82–6104.

United States Court of Appeals,
Eleventh Circuit.

July 17, 1984.

Thomas D. Lardin, Weaver, Weaver & Lardin, P.A., Fort Lauderdale, Fla., for Stripling.

Smathers & Thompson, Miami, Fla., Rodney Earl Walton, Fitzgerald, Taylor & Zwicky, or Ronald Fitzgerald, Susan Powell Sistare, Fort Lauderdale, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, and JOHNSON and CLARK, Circuit Judges.

JOHNSON, Circuit Judge:

This appeal presents the single issue of whether the district court abused its discretion in dismissing appellant Stripling's counterclaim as a sanction under Fed.R. Civ.P. 37(b)(2) for failure to comply with a discovery order.[1] Holding that it did, we reverse and remand this case for reinstatement of Stripling's counterclaim.

This lawsuit was commenced by Allied Marine to recover payment for work done on a vessel, the "LUNITA K," purchased by Stripling from Allied Marine. This claim was ultimately tried to the court, and judgment entered for Allied Marine for $19,572.71. Stripling counterclaimed against Allied Marine, claiming that the vessel was negligently designed and that, as a result, the vessel caught fire, sank and was totally destroyed. Stripling sought damages in excess of $280,000.00 for the value of the vessel and the value of his personal property lost when the vessel sank.

On May 12, 1981, Allied Marine took the deposition of Stripling. Stripling testified that entities in addition to Allied Marine had done repair work on the vessel, provided the names of these entities, and stated that all of the work orders and documents reflecting the work done by entities other than Allied Marine had been on board the vessel when she went down. Stripling, however, volunteered, over the objection of his counsel, to get copies of these documents for Allied Marine since he lived in Alabama where the repair work had been done. Stripling stated that he could get copies of repair invoices from Alabama shops that had worked on the vessel, and told Allied Marine's counsel that "[y]ou can get [copies], too. All you have to do is write them a letter." Stripling also promised to send Allied Marine a list of the personal property lost with the vessel and testified that all of his receipts for this property were on board the vessel when she sank.

The day following Stripling's deposition, Allied Marine filed the request for production that is central to this appeal. That request sought production of photographs of the vessel sinking, a list of personal property that went down with the vessel, and receipts for this property, and asked for:

> All documents reflecting repair work done on the vessel "LUNITA K" by persons or entities other than Searock, Inc., d/b/a Allied Marine. This should include repair work done by Detroit, the Cruisair dealer in Mobile (Joe Goodwin), B & B Marine, and Dog River Marina. This should include not only documents in the possession of the Defendant, but also the ones which the Defendant can easily obtain as testified to in his deposition.

A chronological review of the subsequent history of this request for production provides the framework for our disposition of this case.

On July 23, 1981, Stripling responded to the request for production by providing Allied Marine with photographs of the ves-

---

**1.** Fed.R.Civ.P. 37(b)(2) provides in pertinent part:

> If a party ... fails to obey an order or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

> (b)(2)(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

sel sinking and forty-nine repair invoices from Orange Beach Marina. Stripling's response stated that the invoices were those "thus far received," and that the list of personal property and receipts would be forthcoming.

On August 20, Stripling filed a supplemental response consisting of additional photographs of the vessel. Stripling's counsel informed Allied Marine that Stripling was in the process of a diligent search for the invoices and receipts, was having difficulty obtaining them, and would forward them to Allied Marine as soon as he received them.

On September 29, Allied Marine filed a motion pursuant to Rule 37 seeking an order compelling production of the repair invoices, the list of personal property and receipts. On October 8, Stripling filed a supplemental response consisting of a list of, as well as prices for, the personal property. On October 21, the district court granted Allied Marine's motion to compel production of the repair invoices and receipts for the personal property.

On November 12, Allied Marine moved for sanctions, including dismissal of Stripling's counterclaim, under Rule 37 on the ground that no invoices or receipts had been forthcoming. On November 30, Stripling responded to the motion for sanctions, stating that he had requested the repair invoices, that no responses had been received, that he was again contacting the repair shops to obtain these documents, and that likewise, although he had contacted the stores where the personal property had been purchased and requested receipts, none had been provided. Stripling's motion concluded:

> Defendant is attempting to obtain all documentation requested by Plaintiff and which this Court has ordered to be produced, and is also attempting to reconstruct items which were destroyed, but as of this date, has been unable to do so. This Defendant can only state to this Court that he is making every effort to comply with this Court's directives and Plaintiff's motion for sanctions should be denied.

On December 4, the district court entered an order requiring Stripling to produce the receipts and invoices within ten days of the date of the order, or suffer the dismissal of his counterclaim. Stripling moved for clarification or reconsideration of this order on the grounds that he had complied with most of the request for production, that he was making a diligent effort to produce the requested documents and to reconstruct items burned with the vessel, and that the counterclaim should not be dismissed for his inability to promptly provide the repair invoices and receipts.

On December 17, Allied Marine again moved for sanctions, including dismissal, under Rule 37. On December 18, the district court entered an order dismissing Stripling's counterclaim. On December 23, Stripling filed a motion for relief from this order, again stating that he had done his best to comply with the discovery requests, but had been unable to produce invoices and receipts of which he currently did not have a copy. On January 6, 1982, the district court entered an order setting aside its previous order dismissing the counterclaim; finding that the documents were essential for Allied Marine to defend against the counterclaim, the district court gave Stripling until January 20 to furnish the documents or suffer the dismissal of his counterclaim. On January 19, Stripling responded to that order by producing letters from the two marinas that did write him back concerning repair work they had done on the vessel[2], advised the district court that these were the only documents he could obtain despite diligent efforts, and stated that the documents requested were not in his possession or control, having gone down with the vessel.

On January 21, Allied Marine filed its third motion for sanctions under Rule 37. On January 29, the district court entered its final order in this case, which is the

---

**2.** Dog River Marina's response to Stripling's counsel's inquiries was that it had done no work on the vessel, and B & B Marina stated that it was still looking for the invoices for its work.

subject matter of this appeal. The district court declared Stripling's statement concerning his inability to produce the documents to be an untimely objection to the request for production, and proceeded to dismiss the entire counterclaim.

The legal standards governing our review of the district court's exercise of its discretion in this case are clear. Previous cases decided by this Court have noted that the district court's discretion under Rule 37 is broad but not unlimited. The limits placed on this discretion have been fashioned in light of the recognition that dismissal under Rule 37 "is a sanction of the last resort, applicable only in extreme circumstances." *Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976).[3] A finding of such extreme circumstances necessary to support the sanction of dismissal must, at a minimum, be based on evidence of the sanctioned party's willfulness, bad faith or fault in failing to comply with a discovery order. *E.E.O.C. v. Troy State University*, 693 F.2d 1353, 1354 (11th Cir.1982). Thus, it is well established that a party's simple negligence or other action grounded in misunderstanding of a discovery order does not justify the "use of the Draconian remedy of dismissal." *Id.* at 1357, *quoting Marshall v. Segona*, 621 F.2d 763, 767 (5th Cir.1980). It is equally well established that a party's inability to comply with a discovery order will not support the sanction of dismissal:

> [R]ule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner, *Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958); *see also National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976).

Stated differently, "[w]hen the disobedient party shows that his recalcitrance was based on factors beyond his control ... a reviewing court is justified in terming the dismissal an abuse of discretion." *Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379, 1381 (5th Cir.1976).

Finally, this Court has reviewed two other factors in determining whether dismissal under Rule 37 constitutes an abuse of the district court's discretion. "Whether the other party's preparation for trial was substantially prejudiced is a consideration," *Marshall, supra* at 768, which, although not controlling, is significant. Additionally, "dismissal is generally proper only where less drastic sanctions cannot substantially accomplish its purpose." *Troy State University, supra* at 1358.

In light of these principles, we consider the dismissal of Stripling's counterclaim. We note that the district court made no findings in any of its orders pertaining to dismissal in this case as to Stripling's ability to produce the documents, his willfulness, bad faith or fault in seeking to obtain the documents, the resulting prejudice to Allied Marine, or the availability of less drastic measures short of dismissal. In order to uphold the final dismissal order, the factors supporting dismissal must be apparent from the record.

First, we consider the related issues of Stripling's ability to produce the requested documents and his willfulness, bad faith, or fault in failing to produce them after having been given numerous opportunities to do so by the district court. Under Fed. R.Civ.P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand. Allied Marine contends that because Stripling asserted in his deposition that he could obtain the documents upon demand he is estopped from later claiming that he did not have control over the documents and from claiming ina-

---

**3.** The Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, which is binding unless and until overruled or modified by this Court en banc. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

bility to produce the documents by reason of this lack of control to secure and produce the documents in the custody of the repair shops. Stripling's assertion that he had "control" over the documents does not conclusively decide this issue. Further, a fair reading of Stripling's deposition testimony does not support a characterization of his testimony as a statement that he had the *legal right* to obtain the documents on demand; instead his testimony on this point was merely a statement that because he lived in Alabama where the repair work was done he would write letters to the repair shops and attempt to obtain the documents. Throughout the course of this litigation, Stripling continually represented to Allied Marine and the court that he did not have possession of the documents because they went down with the vessel, that he was diligently attempting to obtain the documents and, finally, that he had produced all of the repair invoices he was able to obtain from the repair shops. In short, it does not appear from this record that Stripling asserted "control" over the documents in the sense required for production under Rule 34.

■ We do not, however, completely rest our holding on this factor of "control". We find instead that· the primary dispositive issue is whether Stripling made a good faith effort to obtain the documents over which he may have indicated he had "control" in whatever sense, and whether after making such a good faith effort he was unable to obtain and thus produce them. The only evidence on this point is the uncontradicted representation, made throughout Stripling's responses to the request for production, his responses to Allied Marine's motions for sanctions, and his motions for clarification and relief from the dismissal orders, that he was diligently and in good faith seeking to obtain the documents and

that the documents produced were all that he had been able to obtain after such a good faith effort. There is no evidence that Stripling acted willfully, in bad faith or was at fault in failing to produce the documents which he attempted and was unable to obtain. Since Stripling's noncompliance with the production order was due to his inability, after a good faith effort, to obtain these documents, the district court abused its discretion in dismissing his counterclaim.

Second, we note that although the district court found that these documents were essential to Allied Marine's defense of counterclaim, the record in this case does not reflect that Allied Marine took any action to attempt to secure these crucial documents itself. Clearly, Allied Marine had the ability to subpoena these documents by taking the deposition of the custodians of the records of the companies concerned, Fed.R.Civ.P. 45(d)(1); however, the record does not reflect any such attempt by Allied Marine. Since Allied Marine also could have obtained the required documents—if they were then in existence—and failed to attempt to do so, it does not appear that Allied Marine's preparation for trial was substantially prejudiced by Stripling's failure to obtain and produce them.

Third, we note that the district court made no findings as to whether a less drastic measure than dismissal would have been an appropriate sanction. Since we hold that from the record Stripling's failure to produce the documents was due to his inability to do so after a good faith effort in attempting to comply, a lesser sanction probably would not have been justified in this case; however, the district court erred in dismissing the counterclaim without first considering whether any alternative sanction would have been effective.[4]

4. Allied Marine claims that the first time Stripling informed it or the court that the documents were not in his control was in his final response to the request for production made after the entry of the discovery order, one order dismissing the counterclaim, and two orders granting him time to produce the documents or

suffer the dismissal of his counterclaim. Allied Marine argues that until this response. Stripling represented to it and the court that he was attempting to and could obtain the documents, and terms Stripling's final response that he did not have control over the documents an untimely objection to the Rule 34 request for produc-

Finally, we hold that Allied Marine's reliance on *Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379 (5th Cir.1976) and *Jones v. Graham*, 709 F.2d 1457 (11th Cir.1983), is misplaced. In fact, both *Emerick* and *Jones* highlight the controlling legal principles requiring reversal in this case.

In *Emerick*, the district court's final order dismissing appellant's answer and counterclaim stated that appellant had failed to comply with its previous orders compelling the production of requested documents and that such failure to comply remained, as found in a previous order, "unbelievably flagrant." Applying the principle that "[w]hen a defendant demonstrates flagrant bad faith and callous disregard of its responsibilities, the district court's choice of the extreme sanction is not an abuse of discretion," 539 F.2d at 1381, the former Fifth Circuit held that "[i]n the case at bar, the district court's findings that the appellant was in 'flagrant disregard' of the court's orders finds support in the record." *Id.* For this reason, the dismissal order was upheld.[5]

In *Jones*, the district court's final order dismissing plaintiffs' complaint stated that the court had considered lesser sanctions but rejected them, and that " 'Plaintiffs' flagrant and consistent failure to timely comply with court orders, and their virtual lack of prosecution in these cases, has greatly prejudiced defendants,' which prejudice 'can only be cured by the sanction of dismissal.' " 709 F.2d at 1462. In *Jones* the appellate court found that the record supported dismissal on the grounds of delay by the plaintiffs in initiating discovery and proceeding to trial, willful violations of the court's orders, and the failure of less drastic sanctions imposed by the district court prior to dismissal.

In contrast to *Emerick* and *Jones*, the district court in this case made no findings that Stripling's failure to produce the documents was due to willfulness, bad faith, or fault, and, as we have held, the record in this case would not support such a finding. Therefore, we hold that the district court abused its discretion in dismissing Stripling's counterclaim; accordingly, we REVERSE and REMAND this case to the district court with instructions to reinstate Stripling's counterclaim.

---

tion. The district court's final order of dismissal also read Stripling's response as an untimely objection.

Our reading of the record supports Stripling's version of the events. Stripling claims that he never objected to the request for production, but instead informed both Allied Marine and the court that the documents requested had gone down with the vessel, that he was willing, and doing the best he could, to comply with the request by seeking to obtain copies of these documents from the companies who might have them, that he did produce what he was given by the companies that responded, and that the final response to the request for production was the first time he was aware that he could not obtain all of the requested documents. We note that Stripling did not explicitly state that the documents were not in his control prior to the final response, but it seems clear from the record that he repeatedly represented throughout the course of the proceedings that his ability to produce the documents was contingent upon the cooperation of the companies who possessed the documents.

Therefore, we reject Allied Marine's claim that this conduct would support the extreme sanc-

tion of dismissal, and further doubt whether Stripling was even minimally at fault, perhaps justifying the imposition of a lesser sanction, in failing to explicitly state that he did not have the legal right to obtain these documents prior to his final response.

**5.** Allied Marine relies on the *Emerick* court's statement that, "[Appellant's] strongest argument is that it was unable to comply with appellee's request for 'ledgers and journals' because the appellant did not keep ledgers or journals .... This argument was not raised prior to November 1975 [, ten months after the initial request]," 539 F.2d at 1380–81, in support of its argument that Stripling's "untimely objection" demonstrates flagrant bad faith justifying the dismissal of his counterclaim. First, we have noted that the substance of Stripling's claim that he did not have control of the documents was raised well before his final response to the request for production. *See* note 4, *supra.* Second, the *Emerick* court did not detail the record evidence supporting the district court's flagrant bad faith finding and it is not clear if appellant's failure to raise this argument was considered as such evidence.