BASF Corporation, one of the defendants in a pending Toxic-tort action, has filed a petition for a writ of mandamus requesting that this Court direct the trial court to vacate its order granting the plaintiffs' motion to compel BASF to produce documents that are under the exclusive control of its parent corporation in Germany. We grant the petition and issue the writ.
 I. Factual Background and Procedural History
Approximately 1,600 plaintiffs in several consolidated cases in the Bessemer Division of the Jefferson Circuit Court allege that they suffered injuries resulting from the use of the defendants' products containing toxins in area coal mines.[1] On February 2, 2006, the plaintiffs served BASF with six supplemental requests for production. BASF says that those requests seek documents that it does not possess but that may be in the files of its German parent company, BASF Aktiengesellschaft ("BASF AG"), as to which BASF is a third-tier subsidiary. In response to the requests, BASF says it explained to the plaintiffs that it did not have control or possession of the documents sought, and it submitted the affidavit testimony of its senior vice president and general counsel, David Stryker. Stryker testified that BASF and BASF AG are separate corporate entities that manage their business affairs independently and that when BASF asked BASF AG to produce the requested *Page 1106 
documents, BASF AG refused. BASF AG is not a party to this action.
The plaintiffs filed a motion to compel. The trial court granted the motion and entered the following order: "Plaintiffs' motion to compel production of documents from Defendant BASF Corp. is granted. These documents and answers to production shall be provided within 30 days without objection or claim of privilege." BASF then filed this petition for the writ of mandamus, asking this Court to direct the trial court to vacate its order.
 II. Standard of Review "`Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'"
Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10
(Ala. 2003) (quoting Exparte Integon Corp.,672 So.2d 497, 499 (Ala. 1995)).
 "`[O]ur judicial system cannot afford immediate mandamus review of every discovery order.' Ex parte Ocwen Fed. Bank, 872 So.2d 810, 813
(Ala. 2003). When a petitioner seeks mandamus review of a discovery order, this Court will grant the review only after making two determinations. First, because discovery matters are within a trial court's sound discretion, we must determine that the trial court in issuing the discovery order clearly exceeded its discretion. Second, we must ensure that the petitioner does not have an adequate remedy by appeal. 872 So.2d at 813.
 "`In certain exceptional cases . . . review by appeal of a discovery order may be inadequate.' 872 So.2d at 813. The four most common examples of cases in which review by appeal may be inadequate, although the list is not exhaustive, are
 "`(a) when a privilege is disregarded . . .; (b) when a discovery order compels the production of patently irrelevant or duplicative documents, such as to clearly constitute harassment or impose a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party . . .; (c) when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party's entire action or defense so that, in either event, the outcome has been all but determined, and the petitioner would be merely going through the motions of a trial to obtain an appeal; or (d) when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that the appellate court cannot review the effect of the trial court's alleged error.'
 "Ocwen, 872 So.2d at 813-14."
Ex parte Crawford Broad. Co., 904 So.2d 221, 224
(Ala. 2004).
This case does not fall squarely within any one of the four examples of cases discussed by the Court in Ocwen Bank
in which review by appeal would be inadequate. As we stated inCrawford Broadcasting, however, the list of examples in Ocwen is not exhaustive. This case presents a situation in which a discovery order compels the production of documents that a party contends it does not possess and over which it contends it cannot obtain control, thereby making compliance with the trial court's order compelling production impossible. Therefore, review by appeal would be inadequate in this case, and mandamus review is appropriate. *Page 1107 
 III. Analysis
BASF first argues that the trial court's order disregards the Alabama Rules of Civil Procedure. Rule 34, Ala. R. Civ. P., allows a court to order a party to produce documents "which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served." BASF asserts that as an independent corporate subsidiary of BASF AG it does not have control over the documents sought by the supplemental discovery requests and that the plaintiffs cannot show that BASF has possession, custody, or control of those documents. According to the United States Court of Appeals for the Eleventh Circuit, "control is the test with regard to the production of documents" under Rule 34, Fed.R.Civ.P. Searock v. Stripling,736 F.2d 650, 653 (11th Cir. 1984).[2] The Eleventh Circuit has defined control "not only as possession, but as the legal right to obtain the documents requested upon demand." 736 F.2d at 653. Other federal courts of appeals have applied a similar definition of control. See, e.g., In re Citric AcidLitig., 191 F.3d 1090, 1107 (9th Cir. 1999); CochranConsulting, Inc. v. Uwatec USA, Inc.,102 F.3d 1224, 1229-30 (Fed. Cir. 1996); Gerling Int'l his. Co. v.Commissioner, 839 F.2d 131, 140 (3d Cir. 1988).
The plaintiffs argue that BASF could have obtained control over the requested documents, relying upon the deposition testimony of BASF employee Bill Robert. Robert testified as follows:
 "Q. . . . Could you call somebody, being BASF America, whatever — however, the designation you wanted, BASF over here in the United States — called somebody in the German sister corporation and said, you know, we are interested over here in finding out what these presentations by Dr. Botham — and what the follow-up proposals were and all that stuff — is it your expectation that if you made that call someone over there would perform a search and find out whether those documents were there and if they existed send them to you?
 . . . .
 "A. Yes, I think that probably was the case.
 "Q. Well, do you think — I'm talking about whether that call went out today from you.
 "A. That would — First, I would have to find out who to call, because I don't know who's in that department. It would take me awhile to try to find this.
 "Q. But your expectation would be that they would —
 "A. If they were there.
 "Q. They would oblige and forward the documents?
 ". . . .
 "A. Yes."
Contrary to Robert's "expectation" that BASF AG would be willing to produce the documents, Stryker testified that he had asked BASF AG in a letter "to consider making certain documents requested by plaintiffs in this case, if any, available in discovery through BASF." BASF AG replied that it was not willing to provide documents to Stryker and that it complied with discovery requests from outside Germany only if the requests were made in accordance with the provisions of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *Page 1108 
20 U.S.T. 361. In light of BASF AG's actual refusal to provide the documents when requested to do so by Stryker, we conclude that the plaintiffs' reliance upon Robert's testimony that he expected that BASF AG would oblige and forward the documents if asked is insufficient evidence of "the legal right to obtain the documents requested upon demand." Searock v.Stripling, 736 F.2d at 653.
BASF next argues that the trial court's order disregards the basic rule of corporate law that a subsidiary is legally distinct from its parent corporation. BASF maintains that a court cannot ignore separate corporate status unless the party seeking to compel production proves that the subsidiary corporation is inadequately capitalized, that it was conceived and is operated for a fraudulent purpose, or that it is being operated as the alter ego of an entity with corporate control. See M M Wholesale Florist, Inc. v. Emmons,600 So.2d 998 (Ala. 1992), and First Health, Inc. v.Blanton, 585 So.2d 1331 (Ala. 1991). BASF says that the plaintiffs did not allege any of these circumstances and that the trial court did not find any of them to exist here. The only evidence before the trial court concerning the corporate relationship of BASF and BASF AG is Stryker's affidavit, in which he testified as follows:
 "2. BASF Corporation is a Delaware corporation with its principal place of business in New Jersey. During all times relevant to this litigation, BASF Corporation was and is a wholly-owned subsidiary of BASF Americas Corporation. BASF Americas Corporation is a Delaware Corporation with its principal place of business in New Jersey. It is a wholly-owned subsidiary of BASFIN Corporation, which is also a Delaware corporation. None of the shares of BASF Corporation, BASF Americas Corporation and BASFIN Corporation are publicly traded.
 "3. BASF Aktiengesellschaft ('BASF AG') is a German corporation, headquartered in Ludwigshafen, Germany, and it owns 100% of the stock of BASFIN Corporation. The stock of BASF AG is traded publicly in Germany and in certain other countries outside the United States and its American Depository Receipts are listed on the New York Stock Exchange for trading in the United States. Its business affairs are directed by a Board of Executive Directors, based in Germany and operating pursuant to German corporate law.
 "4. BASF Corporation manages its own business affairs in the United States, and those affairs are governed by Delaware corporate law and overseen by BASF Corporation's own Board of Directors and a committee of its senior executive employees called the North American Executive Committee ('NAEC'). Meetings of the NAEC and the BASF Corporation Board of Directors are held at different times and places from those of the Board of Executive Directors of BASF AG, and minutes of those meetings are maintained separate and apart from any corporate record of BASF AG. The NAEC and the BASF Corporation Board of Directors are separate from BASF AG's Board of Executive Directors and are not controlled by that Board.
 "5. BASF Corporation's Chairman and CEO, together with the NAEC and other officers of the Corporation, including the Presidents of its operating divisions, are responsible for the day-to-day operations of BASF Corporation. All of the officers of BASF Corporation are also employees of BASF Corporation. BASF Corporation maintains offices, corporate, business and financial records and manufacturing, research, sales and distribution facilities separate from the *Page 1109 
operations, records and facilities of BASF AG.
 "6. BASF Corporation is financially viable independent of BASF AG. It is fully and adequately capitalized, pays its own debts and is responsible for its other obligations, and issues its own commercial paper. BASF Corporation pays its own operating expenses, and although it does obtain inter-company financing from time to time from financial subsidiaries of BASF AG, such loans are provided on commercially-reasonable terms pursuant to written agreements. BASF Corporation maintains its own books and records, files its own United States tax return, and observes all corporate formalities.
 "7. BASF Corporation maintains a separate payroll for its approximately 8,000 employees and provides its own benefit plans and a fully-qualified pension program for such employees, independent of any support from BASF AG. BASF Corporation has its own sales force and sells to its own customers."
The plaintiffs do not dispute BASF's corporate status, but merely note the liberal construction to be given the rules of discovery in order to "foster broad discovery." See Ex parteCUNA Mut. Ins. Soc'y, 822 So.2d 379, 383 (Ala. 2001). Relying upon several cases decided by the United States District Courts in New York (two of which are not reported in F.Supp.2d), the plaintiffs argue that a party is considered to have control of a document for discovery purposes if the party has access to the document and can obtain the document for its own use to defend itself in litigation. See New York ex rel. Broadmanv. National R.R. Passenger Corp., 233 F.R.D. 259
(N.D.N.Y. 2006) (the question whether a party has control of documents sought in discovery is not limited to whether the party has a legal right to the documents, but whether it has access to and the ability to obtain the documents);Ssangyong Corp. v. Vida Shoes Int'l Inc., No. 03 Civ. 5014 (S.D.N.Y. May 20, 2004) (not reported in F.Supp.2d) (finding defendant's assertion that foreign affiliate would refuse to provide documents necessary to assist defendant in litigation inconceivable); Hunter Douglas, Inc. v. ComfortexCorp., No. Civ. A. M8-85 (S.D.N.Y. January 11, 1999) (not reported in F.Supp.2d) ("[I]f the nature of the relationship between the parent and its affiliate is such that the affiliate can obtain documents from its foreign parent to assist itself in litigation, it must produce them for discovery purposes.");Cooper Indus., Inc. v. British Aerospace, Inc.,102 F.R.D. 918 (S.D.N.Y. 1984) (because documents sought from defendant's foreign affiliate related to product defendant worked with daily, it was inconceivable that defendant would not have access to and ability to obtain documents). The plaintiffs maintain that BASF never denied that it could obtain the requested documents from BASF AG if it needed the documents to prepare its defense in these cases and that BASF in fact produced three documents that were authored by BASF AG. Because BASF is "able" to obtain the documents, the plaintiffs argue, under applicable law BASF has control of the documents sufficient to require BASF to produce the documents.
In response, BASF first asserts that the three documents it produced to the plaintiffs were not obtained from BASF AG but, instead, were obtained from an industry trade association, the International Isocyanate Institute, Inc. Copies of these documents have been provided to this Court as exhibits in this petition for the writ of mandamus. It is clear from those exhibits that although the documents in question were authored by BASF AG, they were distributed by the Institute. Therefore, BASF's production of the three documents it obtained from the Institute does not demonstrate its control over any documents *Page 1110 
solely in the possession of BASF AG.
The cases relied upon by the plaintiffs can be distinguished. In Boardman, the defendant, Amtrak, sought the production of documents from a state agency that was a party to the action; the documents were in the possession of another state agency that was not a party to the action. The trial court held that the party agency had no right or ability to obtain documents from another agency, and, therefore, that Amtrak did not prove that the party agency had control over the documents sought. In Ssangyong, an unpublished opinion of a magistrate judge, the plaintiff sought documents from the New York branch of a bank headquartered in Hong Kong. The trial court concluded that the headquarters and the branch bank werea single corporate entity. When the bank's counsel testified that the Hong Kong headquarters not only would refuse to provide information that would assist its New York branch in its defense, but also would refuse to provide requested customer information, the magistrate judge found this assertion to be inconceivable and ordered the production of the documents. InHunter Douglas, also an unpublished opinion, the plaintiff alleged that the documents it sought flowed freely between the United States subsidiary and its overseas affiliate. Counsel for the company testified that if the United States subsidiary requested documents necessary to defend itself in litigation, the overseas affiliate would produce them, evidence stronger than the mere "expectation" of the BASF employee in this proceeding. Because the evidence showed that the defendant could obtain the documents sought for its own use, the trial court ordered them produced. In Cooper Industries, the plaintiffs sued as a result of fire damage to an aircraft sold by the defendant. They sought production of service manuals, blueprints, and other documents the defendant said were in the possession of its British affiliate. The defendant was wholly owned by the affiliate, serving as its distributor in the United States. The court held that because the documents sought by the plaintiffs related to the planes the defendant worked with every day, it was inconceivable that the defendant would not have access to the documents and the ability to obtain them if needed.
There is simply no evidence in the record before us at this stage of the proceedings to support the plaintiffs' assertion that BASF could obtain the requested documents for itself if it needed the documents to defend itself in this litigation. BASF has not asked for the records for its own benefit; therefore, the situation wherein BASF AG might agree to produce documents to BASF but would refuse to produce documents to the plaintiffs has not yet occurred. BASF points out that the product at issue in these cases was designed and manufactured by BASF in the United States, as opposed to a product that was manufactured by BASF AG and then distributed by BASF in the United States. Moreover, BASF says, the documents the plaintiffs seek were not originated at BASF and subsequently transferred to BASF AG; this is not, therefore, an instance where a party attempts to shield documents from discovery by storing them with a foreign affiliate.
Based upon the evidence that BASF and BASF AG are separate corporate entities, the evidence that BASF AG refused to produce the documents to BASF when requested to do so, and the lack of any evidence indicating that BASF AG would in the future produce or has already produced documents for BASF's use but not for use by the plaintiffs, we conclude that BASF does not have control over the documents sought, which are in the sole possession *Page 1111 
of BASF AG.[3] Therefore, the trial court exceeded its discretion when it granted the motion to compel and ordered BASF to produce documents in the exclusive control of BASF AG.
 IV. Conclusion
For the reasons previously stated, we grant the petition for a writ of mandamus and direct the trial court to vacate its order granting the plaintiffs' motion to compel.
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and SEE, HARWOOD, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
[1] This appeal arises from one of those cases.
[2] Federal cases construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure because the Alabama Rules of Civil Pro cedure were patterned after the Federal Rules of Civil Procedure. Borders v. City of Huntsville,875 So.2d 1168, 1176 n. 2 (Ala. 2003).
[3] Because we conclude that BASF does not have control over the documents sought by the plaintiffs, we pretermit discussion of BASF's argument that the trial court's order disregards the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, by allowing the plaintiffs to obtain discovery from a foreign corporation without following the procedures set forth in that treaty.