KAREN K. SPECIE, Chief U.S. Bankruptcy Judge
THIS MATTER came before the Court for a continued hearing on September 26, 2018 on Raymond James & Associates, Inc.'s ("Raymond James") Motion to Compel Production of Documents ("Motion to Compel," Doc. 76), Debtor's Affidavit in Opposition to the Motion ("Affidavit," Doc. 80), Debtor's Memorandum of Law in Opposition to Raymond James & Associates, Inc.'s Motion to Compel Production of Documents (Doc. 82), and Raymond James' Memorandum in Support of Raymond James' Motion to Compel Production of Documents (Doc. 84). Having reviewed the pleadings and heard argument of counsel, the Court finds that the Motion to Compel is due to be granted, in part, as set forth in detail below.
BACKGROUND
Debtor, an investment advisor who previously worked with Raymond James, commenced this case on February 27, 2018;[1] he filed his original Schedules and Statement of Financial Affairs on March 27, 2018.[2] Pre-petition, Raymond James and Debtor engaged in a years-long arbitration that resulted in an award against Debtor in the amount of $ 803,271.[3] Raymond James' claim as of the petition date, after *172 credits for amounts Raymond James collected and an agreed $ 10,000 reduction, totaled $ 618,347.29.[4]
On May 21, 2018, Raymond James filed a Notice of Rule 2004 Examination (Duces Tecum) (the "Notice of 2004") which scheduled the examination of Debtor to be held on June 29, 2018.[5] In the Notice of 2004, Raymond James requested that Debtor produce, inter alia , the following documents:
11) All Documents reflecting any commissions, fees or other compensation Debtor (or any entity Debtor owns or controls) received from any person or entity (including Royal Alliance and First Charter) arising out of securities, insurance, investment advisory, or financial planning activities from January 1, 2013 to date, including:
a. Form 1099s or W-2s;
b. Pay stubs;
c. Royal Alliance 1099 Reports;
d. Royal Alliance AUM Trending Summary and Detail Reports;
e. Royal Alliance Line of Business Reports;
f. Royal Alliance Practice Analysis Reports;
g. Royal Alliance Production Summary and Detail Reports;
h. Royal Alliance Revenue Detail Reports;
i. Royal Alliance Revenue Payment Summary and Detail Reports; and
j. Royal Alliance Trails Reports.
As to the above-listed items, the Notice of 2004 instructed Debtor to produce "each report monthly, except to the extent Debtor produces a complete annual report."[6] The Notice of 2004 also instructed Debtor to produce:
(15) Documents reflecting all revenue Debtor produced (whether commissions, fees or otherwise) from all customers he serviced (whether through First Charter, or otherwise) from 1/12015 [sic ] to the Petition Date including:
a. Documents detailing Debtor's gross and net production, both monthly and annually, including recurring and nonrecurring gross dealer concession;
b. Documents sufficient to reflect Debtor's gross and net annual production by customer and household;
c. Documents sufficient to reflect Debtor's assets under administration/management, both monthly and annually;
d. Documents sufficient to show the age and location (city and state) of each client;
e. Documents sufficient to reflect the number of new clients and new assets Debtor generated both monthly and annually; and
f. Complete copies of any report or other Documents which analyzed Debtor's book of business and/or production, including monthly performance and focus reports.[7]
In his written response to the Notice of 2004, Debtor asserted that he had produced certain documents and raised only one objection, specific to Request No. 15:
All clients are clients of Royal Alliance and not those of the Debtor. To the extent the request seeks personally identifiable information of clients of *173 Royal Alliance, the Debtor objects to the request. Subject to that objection, see the following documents ....[8]
On July 30, 2018, the deadline for filing adversary proceedings under 11 U.S.C.§§ 727 and 523, Raymond James filed a Complaint against Debtor alleging objections to discharge and dischargeability.[9] The next day, Raymond James filed the Motion to Compel at issue.
Raymond James maintains that at the Rule 2004 examination, Debtor offered to produce the documents with the requested information: "- i.e. documents generated from the Vision2020 and Business Analytics platforms," after the examination adjourned.[10] According to Raymond James, Debtor has not produced the documents he agreed to, despite repeated requests after the Rule 2004 examination.[11] Debtor's denial of having made any such agreement prompted Raymond James to file the motion at issue.
In early August the Court scheduled a hearing on the Motion to Compel for the morning of August 29, 2018.[12] The afternoon before that hearing Debtor filed his only other response to the Motion to Compel: An Affidavit in which he swore, making no distinction between Request No. 11 and Request No. 15:
The said Motion to Compel seeks the production of documents as to which Your Affiant may have access from time to time in the ordinary course of ... business, however the documents do not belong to, and are not the property of, [Debtor].... Affiant objects to the production of said documents, either as a consequence of court order or otherwise...[13]
In that Affidavit, Debtor also declared, for the first time in writing in this case, that the documents requested are not his, but rather are property of his current employer, Royal Alliance Associates, Inc. ("Royal Alliance").[14]
At the August 29 hearing, Debtor's counsel articulated two bases for Debtor's opposition to the Motion to Compel: first, that under the "pending proceeding" rule Raymond James must now request the documents in its adversary proceeding rather than via a Rule 2004 examination; and secondly, that Debtor cannot be compelled to produce the documents in response to Request No. 11 and Request No. 15 because they belong to and are in the possession, custody and control of Royal Alliance.[15]
A. The "pending proceeding" rule should not and does not apply to this document production.
"The 'pending proceeding' rule states 'that once an adversary proceeding *174 or contested matter has been commenced, discovery is made pursuant to Federal Rules of Bankruptcy Procedure 7026 et seq. , rather than by a [Rule] 2004 examination."[16] Applying the pending proceeding rule is discretionary and not mandatory.[17] Here, Raymond James began its quest to obtain the documents though its Rule 2004 examination long before it filed its adversary proceeding. "One of the primary purposes of a Rule 2004 examination is as a pre-litigation device."[18] For that reason alone, Raymond James should be permitted to complete this portion of its discovery in this case, rather than having to begin anew in the adversary proceeding.
Debtor asserts that the subject of Raymond James' document request is encompassed within its adversary complaint against him. This is only partly true. The other, if not the primary, subject of Raymond James' inquiry is the value of the only non-exempt asset Debtor owned when he filed his Petition: his 100% ownership interest in First Charter Investments, Inc. ("First Charter").[19]
The value of First Charter is proper for discovery under Rule 2004. Rule 2004(b) states, in pertinent part, that "[t]he examination of ... the debtor ... may relate only to the acts, conduct, or property or to ... the financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate ...."[20] Raymond James claims that in order to determine the value of Debtor's ownership in First Charter it must first ascertain the value of a "book of business."[21] According to Raymond James, during the five (5) years of the arbitration proceeding Debtor consistently maintained that First Charter's clients were his clients.[22]
Debtor did not list an asset entitled "book of business" in his Schedules or Amended Schedules filed in this case, nor did he list any such asset as belonging to First Charter. Whether Debtor continues to own or owned such an asset at the time he filed his Chapter 7 petition, either on his own or as part of First Charter, is a fact requiring proof beyond the documents filed in this case thus far. But the bottom line is that the value of First Charter is a core matter, regardless of whether it may also be at issue in the pending adversary proceeding.
*175 B. Debtor cannot be compelled to produce documents not within his possession, custody, or control.
Raymond James claims that Debtor should be compelled to turn over the disputed documents for two reasons: 1) the requested documents are within Debtor's possession, custody, or control; and 2) regardless of possession, custody or control, at the Rule 2004 examination Debtor agreed to provide the subject documents.[23] Debtor denies that he has possession, custody or control of, and that he made any agreement to provide, the disputed documents
"Control" is defined as "not only... possession, but as the legal right to obtain the documents requested upon demand."[24] As "proof" that Debtor has possession, custody and control of the requested documents, Raymond James attached to its pleadings copies of documents that appear to have originated from the same online platforms over which Debtor claims he has no custody or control.[25] But these copies, alone, are not proof that Debtor owns or controls the sources of these documents or the information they contain. The cases Debtor cites are persuasive on this issue.
In Siegmund v. Xuelian , two former officers of a corporation objected to a document request on the basis that the requested documents were not in their possession, custody or control; the court sustained this objection.[26] The outcome in Mamani v. De Lozada Sanchez Bustamante , was similar: the court ruled that a former officer of a corporation would not be compelled to produce corporate documents because they were not in his physical possession.[27]
Raymond James has not provided sufficient evidence to show that Debtor has possession, custody or control over the subject documents. Similarly, Raymond James has failed to prove that Debtor has custody or control over documents owned by Royal Alliance, his employer.
Raymond James is correct that Debtor did not raise an objection in writing on the record regarding the documents pertaining to Royal Alliance until he filed his Affidavit the afternoon before the hearing. But, this late-filed Affidavit is not proof that Debtor made no such objection at the Rule 2004 examination, either on his own or through counsel. Further, Debtor included this objection when responding to discovery requests from Raymond James during the Arbitration.[28] Debtor's objection to the *176 Motion on the basis that he does not have possession, custody, or control of documents owned by Royal Alliance is due to be sustained, in part, on that basis.
Raymond James next asserts that Debtor agreed at the Rule 2004 examination to provide the subject documents. As "evidence" of such an agreement, Raymond James submitted copies of email exchanges between it and the attorney who represented Debtor at the Rule 2004 examination. These emails do not prove that any agreement exists; especially since both Debtor and his attorney deny having made any such agreement.[29] Neither party has filed a transcript of any portion of the Rule 2004 examination. Without a transcript, the Court has only Debtor's Affidavit. Beyond that, the Court is left with "he said, he said," and no facts on which to base a ruling that Debtor must produce certain documents because he agreed to do so.
CONCLUSION
Raymond James is entitled to complete this portion of its discovery in this case. Debtor's objections to Request No. 11 and Request No. 15 are sustained, in part, to the extent that Debtor does not have possession, custody or control over the documents requested, and to the extent that the Court has no proof that he agreed to produce the documents.
For the reasons stated, it is
ORDERED:
1. Debtor's objection to the Motion to Compel Production of Documents (Doc. 76) based on the pending proceeding rule is OVERRULED.
2. The Motion to Compel Production of Documents (Doc. 76) is GRANTED, IN PART: Debtor is ORDERED to produce, within twenty-one (21) days from the date of this Order, all documents in response to Request No. 11 and Request No. 15 that pertain to him personally, to First Charter Investments, Inc., and to any other entity of which Debtor had ownership and control.
3. As to Request No. 11 and Request No. 15, the Motion to Compel Production of Documents (Doc. 76) is DENIED, IN PART, without prejudice. Debtor is not compelled to produce documents in the possession, custody and control of Royal Alliance Associates, Inc.
4. As to Request No. 15, this Order is without prejudice to Raymond James' renewal of the Motion with proof, in the form of a transcript of testimony or other, that Debtor made an enforceable agreement to produce the documents.
5. Raymond James' right to make a separate request for the disputed documents from Royal Alliance Associates, Inc. in the pending adversary proceeding is preserved.

Doc. 1.

Doc. 15. Debtor filed Amended Schedules on June 25, 2018. Doc. 61.

See , Claims Register, Claim No. 3, p. 12.

Id. at p. 2. Raymond James' claim is by far the largest unsecured claim of Record. The only other unsecured claim was filed by the Tennessee Department of Revenue in the amount of $ 523.50. See Claims Register, Claim No. 1-1.

Doc. 36.

Id. at ¶ 11 ("Request No. 11").

Id. at ¶ 15 ("Request No. 15").

Doc. 67, ¶ 15.

Doc. 75; Raymond James and Associates, Inc. v. Michael Camferdam , Case No.: 18-03009-KKS (Bankr. N.D. Fla.).

Doc. 76, ¶ 6.

Id. at ¶ 7.

Doc. 77. Debtor's counsel received notice of the hearing almost one month prior to the hearing.

Doc. 80-1,¶¶ 2-3. The Affidavit is silent as to whether Debtor's objections relate solely to Request No. 11 or Request No. 15, so the Court is treating them as though they pertain to both requests.

Id. at ¶ 2.

At the preliminary hearing, the Court required the parties to further brief these issues. See Docs. 82 & 84. In his briefing, Debtor argues that the "pending proceeding" rule, which states that once a formal legal case is commenced, discovery should be pursued pursuant to that proceeding's rules, is applicable here. Doc. 82, pp. 4-7.

In re Wash. Mut., Inc., 408 B.R. 45, 50 (Bankr. D. Del. 2009).

In re Analytical Systems, Inc., 71 B.R. 408, 412 (Bankr. N.D. Ga. 1987).

In re Wash. Mut., Inc. 408 B.R. at 53.

Doc. 15, p. 7; Doc. 61, p. 6.

Fed. R. Bankr. P. 2004(b).

Request No. 15: "[c]omplete [c]opies of any report or other Documents which analyzed Debtor's book of business ..." Doc. 36, p. 5 (emphasis added). Raymond James insists that Debtor has claimed the "book of business" as his , while Debtor professes that he does not own any "book of business." Debtor's current testimony on this subject facially appears to contradict statements he made in 2017 during his deposition in the arbitration proceeding, when he testified that "he owns his book of business" and repeatedly used the term "my clients." Doc. 84-6, pp. 12-13.

During the arbitration, Debtor referred to the clients he managed as my clients . See Doc. 84-5, p. 8; Doc. 84-6, pp. 4,7-10. The document in which Debtor refers to "his clients" is dated April 9, 2015 and falls short of proving that Debtor maintained a "book of business" or "his own clients" in February of 2018, when he filed his Chapter 7 petition. Doc. 84-5. On the record here, it is impossible to tell whether Debtor's statements meant that he considered the clients to be his, individually, and part of a book of business he owned personally, or whether he used those terms to refer to clients of his respective employers whose portfolios he handled.

Raymond James contends that Debtor has produced documents from the same online platforms during the arbitration and in this case in response to the Notice of 2004. According to Raymond James, Debtor repeatedly represented at the Rule 2004 examination that he had possession and control over these documents. Doc. 84.

Siegmund v. Xuelian , Case No. 12-62539, 2016 WL 1359595 (S.D. Fla. Apr. 6, 2016) (citations omitted) citing Searock v. Stripling , 736 F.2d 650, 653 (11th Cir. 1984).

See Doc. 84, Ex. B-D.

Siegmund v. Xuelian , Case No. 12-62539, 2016 WL 1359595 (S.D. Fla. Apr. 6, 2016) (noting that the definition of "control" in the Eleventh Circuit is not only possession, but the legal right to obtain the documents requested upon demand). Here, the Court determined that "the fact that a party could obtain a document if it tried hard enough...[or even] if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means the opposite." Id. at *3.

Mamani v. De Lozada Sanchez Bustamante , Case No. 07-22459, 2017 WL 3456327 (S.D. Fla. Aug. 11, 2017).

In his response to Raymond James' First Request for the Production of Documents and Information filed in the Arbitration, Debtor stated: "[t]he agreement by [the Debtor] to produce a document or category of documents is not a representation that such document or category of documents exists or is in [the Debtor's] possession, custody, or control." Doc. 84-1, p. 2. In the same document, Debtor objected to the document request on the grounds that "it calls for documents or information that does [sic] not exist, or which is outside Respondent's possession." Id. at p. 3.

At the Rule 2004 examination Debtor was represented by attorney John E. Venn. After the Rule 2004 examination attorney Philip Bates became Debtor's co-counsel (Doc. 79) and has represented Debtor since that time. According to Mr. Bates, Mr. Venn would describe the conversation with Raymond James' counsel during the Rule 2004 examination as a "continued discussion" rather than an agreement.