**In re SOCIETE NATIONALE INDUSTR-IELLE AEROSPATIALE and Societe de Construction d'Avions de Tourism, Petitioners.**

No. 85–2306.

United States Court of Appeals, Eighth Circuit.

Jan. 22, 1986.

Before McMILLIAN, ARNOLD, and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Societe Nationale Industrielle Aerospatiale and Societe de Construction d'Avions de Tourism (Petitioners), corporate defendants in a civil action pending in the United States District Court for the Southern District of Iowa, have petitioned this court under Rule 21(a) of the Federal Rules of Appellate Procedure for a writ of mandamus directed at United States Magistrate Ronald E. Longstaff. We conclude that the petition should be denied.

## I. PROCEDURAL BACKGROUND

The Petitioners, corporations owned by the Republic of France, design, manufacture, and market aircraft. Although the Petitioners design and manufacture their aircraft in France, they advertise and sell their aircraft in the United States. In 1980, an aircraft sold by the Petitioners was involved in an accident near New Virginia, Iowa. As a result of this accident, Dennis Jones, John George, and Rosa George (collectively "Plaintiffs") instituted actions for damages against the Petitioners. These actions were consolidated and are pending in the United States District Court for the Southern District of Iowa. Upon the parties' consent, the district court

referred the actions to a magistrate in accordance with 28 U.S.C. § 636(c)(1).

The Plaintiffs served the Petitioners with a series of interrogatories, requests for admissions, and requests for production of documents under the Federal Rules of Civil Procedure. The Petitioners moved for a protective order contending that, to the extent they possessed the documents or information requested by the Plaintiffs, the material was located in France. Thus, the Petitioners argued that the Plaintiffs must conduct their discovery in accordance with the procedures set forth in the Multilateral Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 ("Hague Convention" or "Convention"), to which the United States and France are signatories. The Petitioners also insisted that they should not be required to comply with the Plaintiffs' discovery requests, because to do so could subject the Petitioners to criminal liability under French Penal Code Law No. 80–538, Art. 1–*bis* ("French Blocking Statute"). The magistrate denied the Petitioners' motion for a protective order and ordered the Petitioners to comply with the Plaintiffs' discovery requests. The Petitioners then filed this application for a writ of mandamus, and the magistrate's order has been stayed pending a decision from this court.

## II. JURISDICTION

■ Mandamus review generally is available only in extraordinary situations, *Kerr v. United States,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976); *Central Microfilm Service Corp. v. Basic/Four Corp.,* 688 F.2d 1206, 1212 (8th Cir.1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983), and is not ordinarily available to obtain immediate appellate review of an interlocutory discovery order. *Kerr,* 426 U.S. at 402–03, 96 S.Ct. at 2123–24; *In re Burlington Northern, Inc.,* 679 F.2d 762, 767–68 (8th Cir.1982); *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 599 (8th Cir.1977), *modified on other grounds,* 572 F.2d 606, 611 (8th

Cir.1978) (en banc). However, mandamus review may be appropriate to provide guidelines for the resolution of novel and important questions presented in the discovery order that are likely to recur. *Central Microfilm,* 688 F.2d at 1212, *citing Schlagenhauf v. Holder,* 379 U.S. 104, 111–12, 85 S.Ct. 234, 238–39, 13 L.Ed.2d 152 (1964); *La Buy v. Howes Leather Co.,* 352 U.S. 249, 254–55, 258, 77 S.Ct. 309, 312–13, 314, 1 L.Ed.2d 290 (1957); *General Motors Corp. v. Lord,* 488 F.2d 1096, 1099 (8th Cir.1974). *See also* Note, *Supervisory and Advisory Mandamus Under the All Writs Act,* 86 Harv.L.Rev. 595 (1973).

■ This is the first time this court has been called upon to consider the novel and important questions concerning the interplay between the Federal Rules of Civil Procedure, the Hague Convention, and the French Blocking Statute. In addition, because the Plaintiffs are in the initial stages of discovery, and because the nature of the discovery requests at issue indicate that the answers generated from these requests may necessitate further discovery, we believe the questions presented here may well recur prior to any opportunity to review a final judgment. Thus, we conclude that this is an appropriate situation for mandamus review, and accordingly we will consider the petition on the merits.

## III. THE HAGUE CONVENTION

Unlike the practice in the United States and other common law countries where pretrial discovery is considered a private matter primarily conducted by attorneys, France and other civil law countries regard discovery as a judicial function, to be accomplished by the courts. An attempt by an attorney from a common law country to gather evidence in a civil law country for a proceeding abroad has been considered an unlawful usurpation of the public judicial function, and an illegal intrusion on that nation's judicial sovereignty. *Compagnie Francaise D'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 26 (S.D.N.Y.1984); Edwards, *Taking of Evidence Abroad in Civ-*

*il or Commercial Matters,* 18 Int'l & Comp.L.Q. 646, 647 (1967).

In response to this problem, the Hague Convention was designed to accommodate the civil law signatories' concerns for judicial sovereignty with the needs of litigants to collect evidence within those countries. To effectuate this purpose, the drafters of the Hague Convention provided procedures for the taking of evidence that would be "tolerable" in the country where the discovery takes place and "utilizable" in the forum country. *See Report of the United States Delegation to the Eleventh Session of Hague Conference on Private International Law,* 8 Int'l Legal Materials 785, 806 (1969); Amram, *The Proposed Convention on the Taking of Evidence Abroad,* 55 A.B.A.J. 651, 652 (1969). Although foreign participation in drafting the Hague Convention stemmed from a perception that discovery efforts by American litigants were excessively broad and intrusive on the foreign countries' judicial sovereignty, United States participation was prompted by the frustration American lawyers had experienced in obtaining evidence in the foreign countries. Comment, *The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters: The Exclusive and Mandatory Procedures for Discovery Abroad,* 132 U.Pa.L.Rev.1960, 1965 (1984); Amram, 55 .A.B.A.J. at 651. Of course, the civil law signatories' concern for judicial sovereignty would only be threatened when discovery procedures that are typically considered a judicial function are actually undertaken within the signatories' borders by a private party.

The Petitioners contend that because the Hague Convention is an international treaty specifically designed to accommodate the differences in the taking of evidence between common law and civil law countries, it provides the exclusive and mandatory procedures for obtaining documents and information located within the territory of a foreign signatory. Alternatively, the Petitioners argue that principles of international comity dictate that the Hague Convention be the method of first resort to gather information abroad, until it becomes apparent that such efforts will be futile.

Although a minority of courts have adopted the position advanced by the Petitioners, in our opinion the better rule, which has been adopted by the vast majority of courts, is that when the district court has jurisdiction over a foreign litigant the Hague Convention does not apply to the production of evidence in that litigant's possession, even though the documents and information sought may physically be located within the territory of a foreign signatory to the Convention. In particular, we agree with the analysis of the Fifth Circuit in *In re Anschuetz & Co., GmbH,* 754 F.2d 602 (5th Cir.1985), *petition for cert. filed,* 54 U.S.L.W. 3084 (U.S. Aug. 13, 1985) (No. 85–98), that

> [T]he Convention does not require deference to a foreign country's judicial sovereignty over documents, people, and information—if this is really how civil law judicial sovereignty is understood—when such documents are to be produced in the United States. * * * "[D]iscovery does not 'take place within [a state's] borders' merely because documents to be produced somewhere else are located there. Similarly, discovery should be considered as taking place here, not in another country, when interrogatories are served here, even if the necessary information is located in the other country."

In essence, matters preparatory to compliance with discovery orders in the United States, even where the preparatory acts occur in foreign nations, do not constitute discovery in the foreign nation as addressed by the Hague Convention.

*Anschuetz,* 754 F.2d at 611 (quoting *Graco, Inc. v. Kremlin, Inc.,* 101 F.R.D. 503, 521 (N.D.Ill.1984)) (footnote omitted).

The discovery sought in this case neither intrudes on nor threatens French judicial sovereignty or custom. The magistrate's order does not require any foreign attorneys to appear in France to conduct discovery procedures that are typically con-

sidered a judicial function by France and other civil law countries. The order simply requires the Petitioners, who are parties subject to the jurisdiction of a United States court, to perform certain acts preparatory to the production of documents and information in the United States. These acts do not require any French judicial participation. Hence, we conclude that the Hague Convention does not apply to the discovery sought in this case "because the proceedings are in a United States court, involve only parties subject to that court's jurisdiction, and ultimately concern only matters that are to occur in the court's jurisdiction, not abroad." *In re Messerschmitt Bolkow Blohm GmbH*, 757 F.2d 729, 731 (5th Cir.1985), *petition for cert. filed*, 54 U.S.L.W. 3084 (U.S. Aug. 13, 1985) (No. 85-99).

 We disagree with the Petitioners' contention that such a conclusion will undermine the Hague Convention's stated purpose and render the entire Convention meaningless. The Hague Convention is intended not only to accommodate what civil law countries perceived as a threat to their judicial sovereignty, but also to aid common law litigants in their efforts to gather information within the civil law countries and facilitate the exchange of information between nations. Furthermore, our ruling will not require any discovery to take place in France, and therefore the Convention's purpose of protecting French judicial sovereignty will not be undermined. On the contrary, we believe that a rule requiring domestic litigants to resort to the Hague Convention to compel discovery against a foreign litigant when the district court has jurisdiction over the parties would needlessly delay and frustrate the discovery process, undermining the Convention's purpose of aiding in the flow of information between nations.

In addition, the Hague Convention is justified by other considerations.

> Two important purposes of an international convention of this type relate to discovery of non-parties, and would justify the Convention's existence regardless of how the Convention is deemed to apply with respect to parties before the court. First, a non-party witness may be willing to be deposed at home, but may be unwilling to travel to the country in which the litigation is proceeding. Since some countries would consider the taking of evidence within their borders a usurpation of judicial prerogative, an international agreement setting up a framework for seeking and granting permission has great value, allowing evidence to be taken without affront to local authorities. Second, an unwilling non-party witness simply cannot be reached, if outside the court's jurisdiction, unless authorities in the witness' state use their authority to compel the giving of evidence. An international agreement provides a framework for the invocation of a foreign authority's compulsory powers, making accessible evidence which otherwise would not have been accessible. A multi-state convention, rather than a series of two-state agreements, confers the added benefit of standardized procedures.

*Graco*, 101 F.R.D. at 520 (footnotes omitted). Thus, the Hague Convention will continue to provide useful, if not mandatory, procedures for discovery abroad from foreign nonparties who are not subject to an American court's jurisdiction and compulsory powers.

 The Petitioners also contend that principles of international comity require that the Plaintiffs first attempt discovery through the Hague Convention procedures, and only if their discovery efforts prove futile, the Plaintiffs may then rely on the discovery procedures in the Federal Rules of Civil Procedure. Although we recognize that several courts have required first resort to the Hague Convention, *see, e.g., Philadelphia Gear Corp. v. American Pfauter Corp.*, 100 F.R.D. 58 (E.D.Pa. 1983); *General Electric Co. v. North Star Int'l, Inc.*, No. 83-C-0838, slip op. (N.D.Ill. Feb. 21, 1984); *Schroeder v. Lufthansa German Airlines*, No. 83-C-1928, slip op. (N.D.Ill. Sept. 15, 1983), we agree with the court in *Anschuetz* that "the greatest in-

sult to a civil law country's sovereignty would be for American courts to invoke the foreign country's judicial aid merely as a first resort, subject to the eventual override of their rulings under the Federal Rules of Civil Procedure." *Anschuetz,* 754 F.2d at 613. We believe that such a policy would defeat rather than promote international comity.

## IV. THE FRENCH BLOCKING STATUTE

The Petitioners further insist that they should not be required to comply with the magistrate's discovery order, because to do so would subject them to potential criminal liability under the French Blocking Statute. The relevant provisions of the French Blocking Statute provide as follows:

> Article 1–*bis*—Subject to treaties or international agreements and laws and regulations in force, it is forbidden to all persons to ask, research or communicate, by writing, orally or under any other form, documents or information on economical, commercial, industrial, financial or technical matters leading to establishing proofs for use directly or indirectly in foreign judicial or administrative proceedings.
>
> \* \* \* \* \* \*
>
> Article 2—The persons affected by articles 1 and 1A must inform, without any delay, the Minister in charge whenever they are requested in any manner to provide such information.
>
> \* \* \* \* \* \*
>
> Article 3—Without prejudice to heavier sanctions stipulated by the Law, any infraction to the present Law articles 1 and 1A provisions will be punished with two months to six months imprisonment and with a 10,000 to 120,000 french francs fine or any one of these two penalties only.

Law No. 80–538 of July 18, 1980 (translation attached as exhibit A to *Soletanche & Rodio, Inc. v. Brown & Lambrecht Earth Movers, Inc.,* 99 F.R.D. 269, 273–74 (N.D. Ill.1983)). The Petitioners contend that be-

cause the magistrate's discovery order does not require the Plaintiffs to obtain the requested evidence in accordance with a treaty or international agreement (the Hague Convention), the discovery order requires the Petitioners either to (1) comply with the discovery order and violate Article 1–*bis,* subjecting the Petitioners to the criminal penalties in Article 3, or (2) refuse to comply with the order and face possible sanctions in the district court. In our view, the issues the Petitioners raise must be addressed in two stages.

■ First, we must consider whether the magistrate was correct in ordering the Petitioners to comply with the Plaintiffs' discovery requests, even though compliance may require the Petitioners to violate the French Blocking Statute. The magistrate properly recognized that "[t]he fact that foreign law may subject a person to criminal sanctions in the foreign country if he produces certain information does not automatically bar a domestic court from compelling production." *United States v. First National Bank of Chicago,* 699 F.2d 341, 345 (7th Cir.1983). *See also Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 204–06, 78 S.Ct. 1087, 1091–92, 2 L.Ed.2d 1255 (1958); *In re Westinghouse Electric Corp. Uranium Contracts Litigation,* 563 F.2d 992, 997 (10th Cir.1977) (citing *Societe Internationale* ). Rather, the court must consider the competing interests at stake in each case and strike a careful balance between the competing interests and the extent to which those interests will be affected before determining whether or not to compel discovery. *United States v. Davis,* 767 F.2d 1025, 1034–35 (2d Cir.1985); *First National Bank of Chicago,* 699 F.2d at 345.

■ The magistrate employed a balancing test derived from section 40 of the Restatement (Second) of the Foreign Relations Law of the United States, which has been utilized by a number of other circuits. *See, e.g., Davis,* 767 F.2d at 1034–36 (2d Cir.); *In re Grand Jury Proceedings Bank of Nova Scotia,* 740 F.2d 817, 827–29 (11th

Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 778, 83 L.Ed.2d 774 (1985); *First National Bank of Chicago,* 699 F.2d at 345–46 (7th Cir.); *United States v. Vetco, Inc.,* 691 F.2d 1281, 1288–91 (9th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). Section 40 provides:

Where two states have jurisdiction to prescribe and enforce rules of law and the rules they may prescribe require inconsistent conduct upon the part of a person, each state is required by international law to consider, in good faith, moderating the exercise of its enforcement jurisdiction, in the light of such factors as

(a) vital national interests of each of the states,

(b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person,

(c) the extent to which the required conduct is to take place in the territory of the other state,

(d) the nationality of the person, and

(e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.

Restatement (Second) Foreign Relations Law of the United States § 40 (1965). After carefully reviewing the magistrate's analysis of the competing national interests, we conclude that the district court properly ordered the Petitioners to comply with the Plaintiffs' discovery requests.

The second stage of inquiry is whether the magistrate may impose sanctions against the Petitioners if the French Blocking Statute prevents them from complying with the discovery order. In *Societe Internationale* the Supreme Court held that although a court has the authority to order a foreign party to produce evidence when such production may subject the party to criminal sanctions in his own country, the foreign party's good faith in attempting to comply with the order is relevant to what sanctions, if any, should be imposed in the event of noncompliance. 357 U.S. at 212, 78 S.Ct. at 1095. The Supreme Court

found that, on the record presently before the Court, the Plaintiff had demonstrated its good faith in attempting to comply with the discovery requests and in attempting to secure a waiver of prosecution from the foreign government. Thus, the Court ruled that the sanction of dismissal of the Plaintiff's complaint with prejudice for noncompliance was not justified. *Id.* at 213, 78 S.Ct. at 1096. The Court did, however, state that on remand the district court possessed wide discretion to proceed in whatever manner it deemed most effective and that the government could introduce additional evidence to challenge the Plaintiff's good faith. *Id.*

The record before this court does not indicate whether the Petitioners have notified the appropriate French Minister of the requested discovery in accordance with Article 2 of the French Blocking Statute, or whether the Petitioners have attempted to secure a waiver of prosecution from the French government. Because the Petitioners are corporations owned by the Republic of France, they stand in a most advantageous position to receive such a waiver. However, these issues will only be relevant should the Petitioners fail to comply with the magistrate's discovery order, and we need not presently address them.

Accordingly, we order that the petition for a writ of mandamus be denied. The case is remanded to the district court with instructions to lift its stay and proceed in accordance with this order.

It is so ordered.