COCHRAN CONSULTING, INC.,
Plaintiff–Appellee,

v.

UWATEC USA, INC., and Uwatech
AG, Defendants–Appellants,

and

Ocean's Window, Incorporated,
Defendant.

Nos. 96–1145, 96–1209.

United States Court of Appeals,
Federal Circuit.

Dec. 17, 1996.

James D. Petruzzi, Mason & Petruzzi, Dallas, TX, argued, for plaintiff-appellee. With him on the brief was Robert M. Mason.

Richard L. Schwartz, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Dallas, TX, argued, for defendants-appellants.

Before NEWMAN, LOURIE, and RADER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

This suit for patent infringement was brought by Cochran Consulting, Inc., against Uwatec USA, Inc., its Swiss parent company Uwatec AG, and Ocean's Window, Inc., a distributor resident in the judicial district. The District Court for the Eastern District of Texas ordered the defendants Uwatec AG and Uwatec USA to produce a printed copy of the computer programming (ROM) code that is used in the accused device, Uwatec's scuba dive parameter indicator, and imposed sanctions for their failure to do so.[1]

The Uwatec companies did not own or possess or control the ROM code, and were unable to obtain it or cause its production in the Texas litigation although Uwatec AG brought suit for this purpose in Switzerland against Dynatron, Inc., the owner of the code. Further, the ROM code is unnecessary to prove infringement of the patented invention. On these facts the district court's orders and sanctions were contrary to United States jurisprudence and the Federal Rules of Evidence, as well as in violation of principles of international comity.

## DISCUSSION

The discovery demand was for a printed copy of the ROM code. The ROM code is the programmer's translation of the electronic operation of a device into computer language. During his deposition Markus Mock of Dynatron testified that the code had never been printed, and that the printed form would probably fill more than a thousand pages.

The patent in suit, United States Patent No. 4,999,606 (the '606 patent), does not require, or its specification disclose, any particular ROM code. The '606 patent states only that read only memory (ROM) is one source of memory in the dive indicator; it contains none of the ROM programming such as is here sought by discovery. The entire content of the patent concerning the ROM code is the following sentence:

> The memory may comprise a read only memory (ROM) and a random access memory (RAM) to not only enable storage of information relating to dive tables but to also enable ancillary calculations to be carried out or to store information such as surface interval duration between dives, bottom time water temperature and depth attained in a dive for example.

'606 patent, col. 3, lines 24–30.

The '606 invention is not an invention of software programming: it is an invention of a scuba indicator device for divers, having specified mechanical and electronic components and performing specified functions, as set forth in Claim 1:

1. An underwater transmitter/receiver assembly for use with a self-contained underwater breathing apparatus including a breathing gas tank and a diver's face mask, the assembly comprising:

transmitting circuit means attachable to said tank and including sensor means for providing output signals indicative of variable actual dive parameters, a modulator modulating said output signals, and a transmitting circuit propagating a modu-

1. *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, No. 4:95cv15 (E.D.Tex. November 30, 1995) (ordering production and imposing sanctions against Uwatec USA); and *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, No. 4:95cv15 (E.D.Tex. December 27, 1995) (finding personal jurisdiction, ordering production, and imposed sanctions against Uwatec AG).

lated carrier wave representative of a respective one of said output signals;

means providing information on variable dive parameters to an individual diver wearing said face mask, said information providing means being attachable to the diver and including a receiver circuit which is physically disconnected from said transmitting circuit means and receives therefrom said modulated carrier wave, and a demodulator for demodulating said carrier wave; and

a display device providing to the diver a visual display indicative of a respective variable dive parameter.

The presence of the claim elements and the performance of the claim functions does not depend on the use of any particular ROM code, and infringement is not proved by reference to the ROM code. The demanded discovery is unnecessary to the cause of the plaintiff Cochran in the Texas court. The context and need must be considered when resolving conflict that arises when foreign laws impinge upon discovery demands under the Federal Rules of Evidence.

### THE CONFLICT OF LAWS

It is well known that the laws of some foreign countries present conflicts with or obstacles to United States discovery demands. The Supreme Court considered the law of Switzerland in *Société Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), wherein the Swiss plaintiff was unable to produce certain records requested by the defendant (Rogers was the United States Attorney General, successor to the Alien Property Custodian) because the Swiss government had directly interdicted their disclosure. The district court had dismissed the action, as sanction for the Swiss plaintiff's non-production of the documents located in Switzerland. The Supreme Court held that dismissal was inappropriate since Société Internationale had attempted in good faith to produce the documents, and indeed had produced many but not all of those requested. The Court observed that

the Swiss company was not seeking special privileges, and that it had made full efforts to comply with the discovery requests:

Petitioner has sought no privileges because of its foreign citizenship which are not accorded domestic litigants in United States courts. It does not claim that Swiss laws protecting banking records should here be enforced. It explicitly recognizes that it is subject to procedural rules of United States courts in this litigation and has made full efforts to follow these rules. It asserts no immunity from them. It asserts only its *inability* to comply because of foreign law.

*Société Internationale*, 357 U.S. at 211–12, 78 S.Ct. at 1095–96 (emphasis in original) (citing *Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 133–35, 58 S.Ct. 785, 789–90, 82 L.Ed. 1224 (1938)). The Court stated that:

[F]ear of criminal prosecution constitutes a weighty excuse for non-production, and this excuse is not weakened because the laws preventing compliance are those of a foreign sovereign.

*Société Internationale*, 357 U.S. at 211, 78 S.Ct. at 1095. The Court held that all considerations must be weighed, in determining whether the non-production would be excused.

Applying these principles to the case at bar, Uwatec sought no special privileges because of its foreign citizenship. It made appropriate efforts to comply with the discovery demand, made demand of the Swiss owner of the ROM code, and brought suit in Switzerland for the purpose of obtaining and producing the ROM code. Uwatec asserted only its "inability to comply because of foreign law," *Société Internationale*, 357 U.S. at 212, 78 S.Ct. at 1096, not that it was immune from compliance with the Federal Rules. It is thus necessary to consider whether Uwatec's failure to comply was indeed "due to inability, and not to willfulness, bad faith, or any fault of petitioner." *Id.*

In *Société Internationale* the Supreme Court established several much-discussed general principles.[2] First, to avoid sanctions

---

**2.** Many scholarly reviews have treated this subject. *E.g.,* David E. Teitelbaum, *Strict Enforce-*

the party that is unable to comply with a valid discovery request must have acted in good faith. The Court stated that any evidence of collusion with a foreign government in "court[ing] legal impediments ... would have vital bearing on justification for dismissal of the action." 357 U.S. at 209, 78 S.Ct. at 1094. The non-producing party must have made a good faith effort to obtain sovereign consent to produce the requested records.

The second principle is that a fair balance should be struck when the non-producing party could reasonably incur foreign criminal liability by complying with the discovery order. The Court made clear that failure of production because of potential criminal liability was a weighty excuse. The Court recognized that absence of records might impact upon the burdens and defenses at trial, and left it to the trial court to devise fair procedures and remedies, on the facts and evidence, when compliance is burdened with foreign criminal liability.

■ The third principle is that when compliance with a discovery request is illegal in the foreign country, before non-production is punished in the United States, due consideration must be given to alternative sources of the information or other modes of establishing the necessary facts. In sum, *Société Internationale* requires that when there are foreign legal barriers to the production of documents, the courts in the United States must balance the interests and needs of the parties in light of the nature of the foreign law and the party's efforts to comply in good faith with the demanded production.

These principles are elaborated in the *Restatement (Second), Foreign Relations Law of the United States* (1965). Section 40 of the *Restatement* provides that when two nations have jurisdiction to prescribe and enforce national rules of law that are inconsistent, each nation is required by international law to consider, in good faith, moderating the exercise of its enforcement jurisdiction in light of the law of the other nation. Factors to be considered include whether the particular issue represents a vital national interest; the nature of the parties' interests and the nature of the discovery that is sought; the territory in which the demanded conduct would occur; the nationality of the person ordered to act, in relation to the sovereign that is prohibiting the demanded conduct; and the extent to which a nation is in a position to enforce compliance or penalize non-compliance with its law. The need for the information is relevant, as is the effect of non-production on both sides of the dispute is also relevant. In considering whether to sanction non-production the court must seek a fair balance of the interests and litigation needs of the parties, without doing violence to constitutional due process.

■ In *In re Grand Jury Proceedings (United States v. Field)*, 532 F.2d 404 (5th Cir.), *cert. denied*, 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976) the Fifth Circuit[3] applied the *Restatement*'s balancing test in deciding whether an alien, resident of the Cayman Islands, should be subpoenaed to testify before a grand jury investigating his possible violation of United States tax laws, despite his possible criminal prosecution in the Cayman Islands for violation of that country's bank secrecy laws. In its balance of all factors, the court gave controlling weight to the fact that the disclosure that was sought by the grand jury was not illegal

---

ment of *Extraterritorial Discovery*, 38 Stan.L.Rev. 841 (1986); Thomas Scott Murley, *Compelling Production of Documents in Violation of Foreign Law: and Examination and Reevaluation of the American Position*, 50 Fordham L.Rev. 877 (1982); Note, *Discovery of Documents Located Abroad in U.S. Antitrust Litigation: Recent Developments in the Law Concerning the Foreign Illegality Excuse for Non–Production*, 14 Va.J.Int'l L. 748 (1974); Ivo T. Onkelinx, *Conflict of International Jurisdiction: Ordering the Production of Documents in Violation of the Law of the Situs*, 64 Nw.U.L.Rev. 487 (1969); Note, *Ordering Production of Documents from Abroad in Violation of Foreign Law*, 31 U.Chi.L.Rev. 791 (1964); Don-

ald L. Roth, *Subpoena of Documents Located in Foreign Jurisdiction Where Law of Situs Prohibits Removal*, 37 N.Y.U.L.Rev. 295 (1962). Although there is not unanimity among commentators as to the optimum way to handle issues wherein document production would violate the law of the situs, there is unanimity as to the principles here applied to the Uwatec companies.

3. In matters not within the exclusive jurisdiction of the Federal Circuit we apply the discernable law of the regional circuit housing the district court.

when made within the Cayman Islands but only when made in other countries, and held that the United States' need to enforce its tax laws was dominant in these circumstances. In *Field* the information sought was legally obtainable within the Cayman Islands and was essential to the grand jury's investigation of criminal acts in the United States—whereas for the Uwatec companies the ROM code was not obtainable in Switzerland and appears to be unnecessary to proof of Cochran's infringement case in the United States.

Cases of alleged tax evasion have produced the major body of precedent. These cases do not negate the need to balance the interests of the parties on the facts of the particular case. Even criminal tax evasion cases generally hold only that the criminal law of foreign countries is not an automatic defense to a discovery order. *See, e.g., United States v. Davis,* 767 F.2d 1025, 1034–35 (2d Cir. 1985) ("because such an order may also trench upon the interests of another state, a court is required to strike a careful balance between the competing national interests and the extent to which these interests would be impinged upon by the order"); *United States v. First National Bank of Chicago,* 699 F.2d 341, 345 (7th Cir.1983) (when determining whether to compel a party to produce documents that would result in criminal sanctions "what is required is a sensitive balancing of the competing interests at stake"); *In re Grand Jury Proceedings (United States v. Bank of Nova Scotia),* 691 F.2d 1384, 1389 n. 7 (11th Cir.1982) (applying the *Restatement*'s balancing test), *cert. denied,* 462 U.S. 1119, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983); *United States v. Vetco,* 691 F.2d 1281, 1288 (9th Cir.) ("Courts must balance competing interests in determining whether foreign illegality ought to preclude enforcement of an IRS summons."), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981); *Trade Development Bank v. Continental Insurance Co.,* 469 F.2d 35, 40–41 (2d Cir.1972) (applying *Société Internationale* and § 40 of the *Restatement* to hold that a party need not produce irrelevant information whose production would violate Swiss law); *United States v. First National City Bank,* 396 F.2d 897, 901 (2d Cir.1968) ("what is required is a

careful balance of the interests involved and a precise understanding of the facts and circumstances of the particular case").

In applying this "careful balance" in cases that relate to commercial secrets and civil actions in the United States, the courts have given great weight to whether compliance with the discovery order would violate foreign criminal laws. *See, e.g., Trade Development Bank,* 469 F.2d at 39–41 (sustaining refusal to order disclosure of identity of Swiss Bank customers because disclosure would violate Swiss criminal law); *Reinsurance Company of America, Inc. v. Administratia Asigurarilor de Stat,* 902 F.2d 1275, 1279–80 (7th Cir.1990) (subjection to Romanian criminal sanctions tips the balance in favor of non-production); *In re Société Nationale Industrielle Aerospatiale,* 782 F.2d 120, 126–27 (8th Cir.1986) (considering French Blocking Statute in determining whether to compel discovery). It was inappropriate for the district court to ignore the weight of the Swiss criminal law in balancing the interests attendant upon the Uwatec companies.

■ There was no evidence that the Uwatec companies were attempting to use the Swiss law to escape the obligations of United States law. Guided by the Supreme Court and the criteria of courts that have considered similar issues, we start our analysis with the sound general rule that the person charged must have made a good faith effort to comply with the discovery order:

### 1. Uwatec's Good Faith Efforts

Under threat of sanctions unless it produced a printed copy of the ROM code, Uwatec AG filed suit against Dynatron in the District Court of Zurich, Switzerland. In the Swiss court Uwatec asserted a contractual right to ownership of the ROM code, based on its having paid the cost of development and its exclusive license to use the code. It does appear that this was Uwatec's best legal argument, and indeed Cochran has not suggested a better one. However, it did not succeed. The Swiss court, construing the contracts between Uwatec AG and Dynatron AG, contracts made in Switzerland between Swiss companies and subject to Swiss law,

held that Uwatec AG did not own the ROM code and that Uwatec had no legal right to obtain the ROM code from Dynatron. The Swiss court held:

> The "contractual provisions" (act. 2/1–2) merely grant the plaintiff the right to *use* the defendant's developments for commercial purposes (ref. Guhl vs Marz vs Killer, Swiss Law of Obligation, 8 Ed, Zurich 1991, page 376) and speaks very much against the transfer of all-inclusive originator rights.

*Uwatec AG v. Dynatron AG,* Case No. EU950488.U1/GEU02 (Dist.Ct. Zurich Dec. 20, 1995) (emphasis in original) translation page 6.

It is unclear whether the Texas district court knew of the decision of the Swiss court, which bears a date seven days earlier than the Order of the Texas court imposing sanctions for non-production. However, the Texas court was aware of Uwatec's Swiss litigation, for the court "deem[ed] the facts contained within the Swiss complaint to be true." *Cochran Consulting,* November 30, 1995 slip op. at 5. Deeming a complaint to be an admission of the ultimate fact therein placed in contest is unwarranted, particularly after the Swiss court held contrary to Uwatec's position. This was the only evidence referred to by the district court for concluding that the Uwatec companies control the code. The Swiss court ruled, unequivocally, that Dynatron, not Uwatec, owned the ROM code.[4]

■ The Swiss judgment that Dynatron was owner of the ROM code was regularly and openly reached and announced. Under long-established principles of international comity, a foreign judgment is recognized when

> there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own

country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting, or fraud in procuring the judgment.

*Hilton v. Guyot,* 159 U.S. 113, 202, 16 S.Ct. 139, 158, 40 L.Ed. 95 (1895); *see, e.g., Phillips USA, Inc. v. Allflex USA, Inc.,* 77 F.3d 354, 359 (10th Cir.1996). The Swiss court referred to the obligations of international law as follows:

> It may be added that it behooves the American court, based on international practice, to be aware of the status of the Swiss courts and seat of court-of-record and to proceed in accordance with American law as in para. 28 Bst. b number 3, Federal Civil Procedure, see Lionel Frei, Swiss Company in the USA, Serving Two Parties: American Rules of Procedure and Swiss Laws of Secrecy, in SJZ 82 (1986) page 73 ff., esp. pages 76–78.

*Uwatec v. Dynatron,* translation p. 7.

There is no reason offered by Cochran as to why or how this judgment of a court of Switzerland, which decided Uwatec's rights in the ROM code in accordance with the law applicable to the parties and the subject matter, should be denied recognition in the United States in accordance with the rules concerning foreign judgments. In accordance with these rules, the relationship between Dynatron and Uwatec, with respect to the ROM code, was resolved.

■ Even if there were no issue of recognition of foreign judgments, the discovery rules of the United States courts require that a party have ownership, custody, or control of a demanded document before a sanction may properly be imposed for failure to produce the document. "In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce." *Gerling Int'l Ins. Co. v. Commissioner,* 839 F.2d 131, 140 (3rd Cir. 1988). "Control" with respect to the production of documents is defined "not only as

---

4. The dissent states that "The agreements require Dynatron to 'transfer all rights to the [developed hardware and software] to Uwatec.'" The Swiss court, construing the agreements after trial of the issue, held otherwise.

possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir.1984).[5]

In imposing upon Uwatec AG and Uwatec USA the duty to produce the ROM code, although they did not possess it and had no right to obtain it, the district court applied incorrect legal standards. The dissent's statement that the Uwatec companies are "plac[ing] their assets in the repose of persons or corporations whose sovereigns assure security in order to thwart discovery in American courts" is a misapplication of *Société Internationale* and indeed is contrary to the Supreme Court's conclusion, for the Court concluded that Société Internationale had acted in good faith and not for the purpose of thwarting discovery. There was absolutely no evidence or reason to suspect that Uwatec AG and Uwatec USA are "falsely hiding behind" the Swiss laws.

### 2. Potential for Criminal Liability

The Supreme Court gave great weight to the factor of criminal liability, undoubtedly recognizing that it is inappropriate for the United States, a nation founded on the rule of law, to require that a person violate the criminal laws of a sovereign nation. The Swiss court held:

> [F]inding that the defendant retains ownership and is the owner of the originator rights of the ROM-code, presentation by the plaintiff of the ROM-code during the American trial without permission of the defendant would violate defendant's rights and be covered by Criminal Law Art. 273 StGB. This decision does not only protect the interests of private enterprise and originator secrets but also the commercial aspects of Swiss sovereignty.

*Uwatec v. Dynatron,* translation page 7 (citation omitted). Article 273 of the Swiss criminal law provides:

> Whoever explores a manufacturing or business secret in order to make it accessible to a foreign authority or a foreign organization or a foreign private business enterprise or their agents,
>
> Whoever makes a manufacturing or business secret accessible to a foreign authority or a foreign organization or a foreign private business enterprise or their agents,
>
> Shall be punished with imprisonment, in serious cases with penitentiary confinement. This deprivation of liberty can be combined with a fine.

Swiss Penal Code Art. 273 StGB (1989 ed.) (translation).

The Swiss court made clear that if Uwatec produced Dynatron's ROM code without permission, in violation of Swiss law, Uwatec would be subject to criminal liability. This powerful statement of the sovereign and judicial authority of Switzerland was directed to a Swiss company, resident in Switzerland, personally before the Swiss court. The nationality of a party may affect the degree of hardship when a party is faced with conflicting national orders and potential criminal violations. *Restatement,* § 40. Due and fair weight must be given to this fact.

Uwatec and Dynatron provided extensive discovery information. Dynatron's president voluntarily came from Switzerland to Dallas to testify as an expert witness on behalf of the Uwatec companies. He was deposed at length by Cochran on how the Uwatec scuba indicator worked. He provided complete details as to the components and operation of the Uwatec device. Dynatron's president confirmed that Uwatec had asked him to produce the written ROM code, which had been demanded by Cochran five days before the deposition date. He declined, saying "It is my property. It is the entire existence of the company Dynatron."

---

**5.** According to the record, Dynatron is not an affiliated company of either Uwatec USA or Uwatec AG. It was averred that neither of the Uwatec companies nor any officer or director thereof nor anyone affiliated with the Uwatec companies, owned or own any interest in Dynatron. App. at 129 (deposition of Markus Mock). The corollary was also of record. *Id.* at 147–48; *id.* at 161–62 (affidavit of Karl Leemann, director of Uwatec AG). Leemann also averred that no common person or business entity owns or controls both Dynatron and Uwatec AG. *Id.* at 162. The general manager of Uwatec USA declared similarly. There is no record support for the finding that Dynatron is either an "affiliate" or a "captive" of Uwatec.

This opportunity was seized upon by Cochran, who had not made a demand for the ROM code in any of its prior discovery requests. Nonetheless, when the district court ordered the Uwatec companies to produce the ROM code to Cochran, Uwatec AG attempted to obtain the code, legally, by process in a court having jurisdiction of Dynatron. Undoubtedly Uwatec AG knew that Swiss law was not favorable to this cause, and Uwatec had so advised the Texas district court. However, had its argument succeeded in the Swiss court, this issue of non-production would not have arisen. As it was, the Swiss court rejected the argument and prohibited Uwatec, on pain of criminal violation, from obtaining the code and producing it. The threat of Swiss sanctions was explicit, and must, according to *Société Internationale*, be given weight. "[F]ear of criminal prosecution constitutes a weighty excuse." *Société Internationale*, 357 U.S. at 211, 78 S.Ct. at 1095.

### 3. The ROM Code Is Not Part of the '606 Invention

Cochran's counsel was asked, at the argument of this appeal, why he needed the ROM code. His answer was: "Because I am entitled to it as a matter of discovery." Upon further inquiry by the court, Cochran's counsel elaborated: "When you're looking at what signals are being sent from the transmitter to the receiver the commented ROM code which is what we have asked for and what has been discussed provides the answer as to what signals are being sensed and how they are being transmitted."

However, the ROM code that programs the sending of the signals is not the invention claimed in the '606 patent. Indeed, if a ROM code were necessary to describe the '606 invention or state any mode or the best mode of its performance, its absence from the '606 patent would be a fatal flaw under 35 U.S.C. § 112. Infringement resides not in the way the claim limitations and functions are translated into computer language, but whether these limitations and functions are performed by the Uwatec device. The Cochran inventors did not include a ROM code in the '606 patent, the '606 patent is not limited to any particular style of instructing the computer, and Cochran has not suggested that any necessary information is not available from diagnostic tests of the accused device.

The record shows that the schematics of the instrument were provided during discovery and explained during deposition. Cochran has not shown prejudice in proving infringement. As in *Société Internationale*, the stage has not been reached of determining whether adverse inferences may be appropriate under the actual circumstances and burdens of proof. *See* 357 U.S. at 212–13, 78 S.Ct. at 1096 (remanding to the district court for trial on the merits).

■ It is material whether the demanded discovery is necessary to Cochran's case and, if so, whether there are alternative sources of the necessary information. It is incorrect, and thus an abuse of discretion, to impose a serious sanction upon a Swiss company for being unable to provide, on pain of violation of its sovereign law, a document that is not necessary to the case. The grant of a protective order by the district court is inadequately responsive to Uwatec's absence of possession or control and to the foreign liability attendant upon production of the document. Discretion in discovery orders, although quite broad, is not unlimited. *Chilcutt v. United States*, 4 F.3d 1313, 1320 (5th Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 460, 130 L.Ed.2d 367 (1994). Applying the balancing test of precedent, the discovery order was inappropriately issued.

### 4. The Sanctions

The Uwatec companies were enjoined from manufacture, marketing, importation, distribution, servicing, and sale of any product utilizing the ROM code or a substantially similar code. However, the ROM code is not patented (or otherwise presented) by Cochran, and the ROM code used by Uwatec is not charged with infringement of any property right. The accused device is a mechanical and electronic indicator most of which is not computer operated. Uwatec states, without contradiction, that less than 1% of the demanded ROM code relates to the disputed aspect of infringement, *viz.* the transmission of dive parameters to the diver. The Su-

preme Court has instructed that sanctions under Federal Rule 37(b)(2) must meet at least two requirements: (1) the sanctions must be "just," and (2) the sanctions must be related to the particular claim at issue. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707, 102 S.Ct. 2099, 2107, 72 L.Ed.2d 492 (1982). The sanctions imposed do not meet these requirements.

■ The sanction should meet the judicial goal of punishing the errant party in order to deter others who would otherwise be inclined to pursue similar behavior. *Chilcutt,* 4 F.3d at 1321. However, as stated in *Bon Air Hotel, Inc. v. Time, Inc.,* 376 F.2d 118, 121 (5th Cir.1967), *cert. denied,* 393 U.S. 859, 89 S.Ct. 131, 21 L.Ed.2d 127 (1968), "the provisions of Rule 37 must be read in light of the provisions of the Fifth Amendment that no person shall be deprived of property without due process of law." The dissent creates the specter of persons hiding their technology in Switzerland in order to avoid federal process; we have not noticed such inroads upon the relationships that were recognized in *Société Internationale.*

■ Federal Rule 37 is not a legal requirement to do the impossible, and the courts have declined to assess a penalty "for a failure to do that which it may not have been in its power to do." *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 347, 29 S.Ct. 370, 378, 53 L.Ed. 530 (1909). The inability of Uwatec AG and Uwatec USA to produce Dynatron's ROM code was "due to inability fostered neither by [their] own conduct nor by circumstances within [their] control." *Read v. Ulmer,* 308 F.2d 915, 918 (5th Cir.1962). We conclude that the discovery orders and the sanctions were improperly imposed. The orders and sanctions are vacated.

## JURISDICTION

Uwatec AG contends that the district court incorrectly asserted personal jurisdiction over it pursuant to the provisions of Federal Rule of Civil Procedure 4(k)(2). We discern no error in the district court's ruling. *See, e.g., Beverly Hills Fan Co. v. Royal Sover-* *eign Corp.,* 21 F.3d 1558, 30 USPQ2d 1001 (Fed.Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 18, 129 L.Ed.2d 917 (1994).

## COSTS

Costs to the Uwatec companies.

*ORDERS VACATED.*

RADER, Circuit Judge, dissenting.

This case concerns the ability of the United States District Court for the Eastern District of Texas to control its docket and manage the prosecution of suits pending before it. Unlike the court, I believe the district court was within its broad discretion in imposing limited sanctions on the Uwatec companies for their failure to produce the disputed ROM code. In fact, the ROM code resides with Dynatron, a Swiss company set up by Uwatec AG to develop and maintain this potentially claimed feature of the accused device. Because of Switzerland's notorious laws against release of trade secrets and this court's disinclination to hold Uwatec accountable for its decision to keep its ROM code in its Swiss affiliate, Uwatec may have found a way to avoid disclosing its potential infringement. Accordingly, I respectfully dissent.

## I.

### General

Defendants Uwatec AG and Uwatec USA manufacture and sell ALADIN AIR–X dive computers in the United States. The companies are aided in these activities by Dynatron, who is the captive developer and supplier of the operating software (the so-called ROM code) for all ALADIN AIR–X dive computers. Dynatron exists to serve the Uwatec companies. In fact, it was formed in 1987 for the sole purpose of developing the ROM code for Uwatec AG's exclusive use. So close is the relationship among these companies that when Uwatec USA was required to produce a corporate designee under Federal Rule of Civil Procedure 30(b)(6), the company produced Markus Mock, an owner and officer of Dynatron.

After properly charging that Uwatec's ALADIN AIR–X system infringes its United States patent, Cochran sought discovery of a printed version of the ROM code. Despite having reaped the benefits of their close relationship with Dynatron in the marketplace and in the court, the Uwatec companies resisted this discovery on the grounds that the ROM code was the property of Dynatron and, as such, was beyond the control of the Uwatec companies. The district court rejected this argument and repeatedly ordered the Uwatec companies to produce the requested printout. Ultimately unsatisfied with the Uwatec companies' failure to comply with its discovery orders, the district court entered an injunction barring the Uwatec companies from conducting commerce in any ALADIN AIR–X dive computer that used the disputed ROM code. The district court's injunction was to remain in effect until trial on the merits.

Meanwhile, in an apparent attempt to comply with the district court's orders, Uwatec AG applied to a Swiss court for an order requiring Dynatron to produce a printed copy of the ROM code. After the district court entered its pre-trial injunction against Uwatec USA, but before the briefs in this appeal were filed, the Swiss court handed down a decision denying Uwatec's request. The Swiss court also indicated that if Uwatec AG were to produce the ROM code itself, it might be in violation of Swiss criminal law protecting Dynatron's rights in the code. On these facts, the court decides that the district court abused its discretion. I disagree.

Although the panel's opinion treats the matters presented herein as a unitary "conflict of laws" issue, this case really presents two issues relating to discovery procedures in federal district courts. Those issues are, first, whether the Federal Rules of Civil Procedure empowered the district court to order the Uwatec companies to produce the disputed ROM code and, second, whether the district court exceeded the limits of its power to sanction Uwatec for failure to comply with such an order. Supreme Court precedent separates these two inquiries.

## II.

### Orders Compelling Production

Under the Federal Rules of Civil Procedure, a party to a suit may request that another party produce documents or information in the "possession, custody or control" of the other party. Fed.R.Civ.P. 34(a). The word "control" includes not merely physical possession, but also legal control. *See Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir.1984). Thus, a court may properly order a party to produce information beyond its possession, so long as it has a legal right to gain possession. *See generally* 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2210 (1994).

Putting aside the effect of Swiss law for a moment, the record discloses very close relationships and similarity of interests among Dynatron, Uwatec AG, and Uwatec USA. The three companies share the singular purpose of making and selling the ALADIN AIR–X dive computers. As described above, Uwatec AG breathed life into Dynatron for the sole purpose of developing software and hardware for the ALADIN AIR–X dive computer. Under the terms of their agreements, Uwatec AG supplied the initial funding for the establishment of Dynatron. Uwatec AG pays Dynatron for its code development efforts on a per-sale basis. Dynatron employees have represented the Uwatec companies at trade shows and, in this case, in depositions. This close nexus among the Uwatec companies and Dynatron on shared technology lends substantial support to the district court's finding that UAG controls the disputed ROM code.

Importantly, the Uwatec AG–Dynatron agreements transferred all rights to the ROM code to Uwatec AG. Specifically, the agreements require Dynatron to "transfer all rights to the [developed hardware and software] to Uwatec." *See* 1987 and 1988 Agreements Between Uwatec AG and Dynatron AG (English translations), ¶ 1, dated July 15, 1987 and July 15, 1988, respectively. They further provide that "Uwatec is entitled to acquire protection for these rights at its discretion, at its own expense, and in its own name." *Id.*

The district court thoroughly examined these relationships among the defendants and Dynatron, with particular attention to the legal entitlement to technology, and made a reasoned finding that the Uwatec companies control the ROM code. I would not hold that independent companies invariably risk a finding of control by sharing an economic interest in a joint commercial product. But in this case, the district court found control based on the unique facts of this record. Those factors include the close relationship among Uwatec AG, Uwatec USA, and Dynatron and Dynatron's voluntary participation in discovery when it was to its advantage. I believe the record adequately supports the district court's findings.

The panel's opinion relies on the ruling of the Swiss court to negate the finding of control of the ROM code. It notes that the Swiss court held that Uwatec AG did not have a legal ownership of the ROM code and that the court further suggested the prospect of criminal penalties in Switzerland for divulging trade secrets. The United States Supreme Court, however, has addressed the effect of Swiss law on findings of control in United States courts. *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204–06, 78 S.Ct. 1087, 1091–93, 2 L.Ed.2d 1255 (1958). In *Societe*, the Supreme Court refused to expunge a district court's finding of control in the face of potential punishment under Swiss law. *Id.* at 205, 78 S.Ct. at 1092. The Supreme Court recognized that a rule that allowed parties to withhold discovery based on a purported fear of punishment under Swiss law would invite parties to place their assets in the repose of persons or corporations whose sovereigns assure secrecy in order to thwart discovery in American courts. *Id.*

This reasoning applies in this case as well. Although Uwatec AG and Uwatec USA purport to lack possession of the ROM code, the district court found that they control this information. Further, the district court entered a protective order to secure the ROM code against any disclosure other than that necessary for the litigation. Finally, as a Swiss citizen, Uwatec AG is in the best posi-

tion to petition its own government for relaxation of or relief from Swiss civil and criminal laws. *Id.* With the district court's finding of control adequately supported by the record, the reasoning of *Societe* removes the threat of Swiss sanctions from Uwatec AG's and Uwatec USA's arsenal to oppose production of the ROM code.

## III.

### Sanctions

Under Fifth Circuit law, this court reviews the district court's sanctions for discovery violations for an abuse of discretion. *See Chilcutt v. United States*, 4 F.3d 1313, 1320 (5th Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 460, 130 L.Ed.2d 367 (1994). The district court has "broad" and "considerable" discretion in such matters. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 569 (5th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 57, 136 L.Ed.2d 20 (1996). Accordingly, "[i]t is unusual for an appellate court to find abuse of discretion in these matters." *Id.*

The Federal Rules of Civil Procedure expressly authorize district courts to sanction parties for failure to comply with discovery orders. Fed.R.Civ.P. 37(b)(2). *Societe* clearly indicates that this rule pertains without regard to the possibility of criminal sanctions in a foreign country:

> Whatever its reasons, petitioner did not comply with the production order. Such reasons, and the willfulness or good faith of petitioner, can hardly affect the fact of noncompliance and are relevant only to the path which the District Court might follow in dealing with the petitioner's failure to comply.

357 U.S. at 208, 78 S.Ct. at 1094.

Under Fifth Circuit law, three criteria measure the district court's broad discretion to impose sanctions. *See Chilcutt*, 4 F.3d at 1321. First, the sanction must be just and fair. *Id.* Second, the sanction must substantially relate to the claim at issue in the discovery order. *Id.* Third, the sanction must punish the disobeying party, and serve as a deterrent to others who might be inclined to pursue similar behavior. *Id.*

Foremost in the analysis of fairness and justice, the record shows that Uwatec USA and Uwatec AG had ample warning of the court's intention to impose sanctions for disobedience. On at least two occasions, the court issued discovery orders explicitly requiring production of the ROM code. Moreover, over two months before it ordered sanctions, the district court expressly cautioned the parties that further discovery violations would result in sanctions. The record shows that the parties received ample notice of the orders and the prospect of sanctions.

The district court's rejection of stronger sanctions is also indicative of the fairness of its order. In particular, the court considered, but determined not to enter, sanctions striking Uwatec AG's and Uwatec USA's substantive defenses and entering a default judgment against Uwatec AG and Uwatec USA. Unlike these proposed sanctions, the district court's pre-trial injunction does not cripple Uwatec AG's and Uwatec USA's ability to prove noninfringement or invalidity at trial on the merits.

The district court also showed fairness in offering full protection for the ROM code. The district court made every effort to assuage Uwatec AG's and Uwatec USA's legitimate concerns about the compromise of trade secret information. Indeed the record shows no challenge to the adequacy of the protections offered in the district court's protective order.

The panel's opinion indicates that Uwatec AG's efforts to acquire the ROM code in Swiss courts alter the fairness of this sanction. Even if Uwatec AG and Uwatec USA diligently sought to comply by appealing to Swiss courts, see Societe, 357 U.S. at 211–12, 78 S.Ct. at 1095–96, the sanction is still fair because the district court did not order dismissal or otherwise preclude Uwatec AG and Uwatec USA from making a case on the merits as was proscribed in Societe. 357 U.S. at 213, 78 S.Ct. at 1096 ("We decide only on this record that dismissal of the complaint was not justified."). Rather, the district court properly exercised its discretion to temporarily prevent Uwatec AG and Uwatec USA from obtaining economic advantage from their refusal to comply with discovery orders.

Our courts are not rendered impotent merely because the laws of another country may, in varying degree, prevent the courts' orders from ultimately being carried out. In matters respecting their own dockets and the litigants properly before them, trial courts must have the power to balance the interests of the parties and determine the requirements of discovery. When the parties do not comply with the court's requirements, for whatever reason, the court has the further power to rebalance the interests of the parties and determine what consequences attach to the non-production. The Supreme Court has expressly reserved this power in cases, like this one, where one reason for non-production is the specter of foreign criminal penalties. See Societe, 357 U.S. at 212–13, 78 S.Ct. at 1096 (noting that plaintiff's inability to produce documents protected by Swiss law may justify the district court in drawing adverse inferences against plaintiff).

None among us would encourage Uwatec AG to flaunt the determination of the Swiss court. Nor do I disparage in any way the laws or decisions of any Swiss institution. But, with all respect for the Swiss law and courts, the focus of this court is properly on the power of United States courts to determine the procedural and substantive rights of litigants before them. This court must be mindful of the state of Swiss law, but our decisions cannot be dictated by it.

The Fifth Circuit standard for discovery sanctions next examines the relationship between the sanction and the claim sought to be proved by the requested discovery. See Chilcutt, 4 F.3d at 1321. This case seeks damages, in part, for patent infringement based on sales of the defendants' ALADIN AIR–X dive computers. The ROM code is the main component of the accused ALADIN AIR–X products. Based on the record, the district court made express findings that the ROM code was a "significant part of the underlying res of the lawsuit" and was "likely to bear significantly on Cochran's claims before this court." The court's injunction covers only the ALADIN AIR–X products "utilizing the ROM Code at issue in this case or

a substantially similar ROM Code." Thus, the district court limited the sanction to the underlying claim Cochran seeks to prove.

The panel's opinion relies on the Uwatec companies' contention that only one percent of the ROM code relates to the disputed aspect of infringement. Yet, on the record before this court, neither defendant company ever objected to the discovery request as being overly broad or sought to limit discovery to only relevant portions.

Moreover, as the district court recognized, Uwatec AG owns the exclusive beneficial rights to the ROM code. Uwatec AG and Uwatec USA have benefited from these rights by importing and selling their ALADIN AIR–X products in this country. Yet when charged with infringement of a United States patent, they refuse to produce the ROM code for the products that they market in the United States. By preventing Uwatec AG and Uwatec USA from importing products with the very ROM code that they refuse to produce, the district court linked the sanction directly to Cochran's discovery violation.

Finally, the district court's sanction deters similar discovery violations. The purpose of sanctions under Rule 37(b)(2) is not to reward parties who comply with discovery orders, but to punish those who do not and to deter others similarly situated. *See National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976). This sanction provides deterrence by conditioning access to United States markets upon compliance with the lawful orders of United States courts.

In sum, I believe that the district court's chosen sanctions fall within the bounds of its discretion. The question is not whether this court would have imposed the same sanctions, but whether the district court's imposition of sanctions was an abuse of discretion. *Id.* at 642, 96 S.Ct. at 2780. On the record, I cannot say that the district court abused its discretion.

### IV.

### Conclusion

Although the panel cites numerous cases and scholarly publications, in the end it offers

no principled reason for rebuffing the discretion of the district court. Nor does it offer guidance as to how the next challenge to a district court's discretion will be judged. About the most that can be said is that the panel weighs the facts and circumstances differently than the district court did. Simply put, this does not amount to an abuse of discretion. Accordingly, I would affirm.